286 So.2d 552 (1973)
RINKER MATERIALS CORPORATION, a Florida Corporation, Petitioner,
v.
CITY OF NORTH MIAMI, a Florida Municipal Corporation, Respondent.
No. 43645.
Supreme Court of Florida.
December 6, 1973.
*553 Anne C. Booth of Booth & Booth, Tallahassee, and Toby Prince Brigham, Miami, for petitioner.
Arthur J. Wolfson and John G. Fletcher, Miami, for respondent.
PER CURIAM.
We review on certiorari the Third District's opinion of February 14, 1973, reported at 273 So.2d 436, rehearing denied March 13, 1973, which upheld the Dade Circuit Court's affirmance of the City's denial of a building permit to the petitioner upon its property in the City's industrial zone.
Conflict appears from failure to follow established decisional rules of statutory construction in the consideration of the legislative intent applying to the law in question, contrary to the holdings which set forth such rules and are hereinafter footnoted. In failing to apply the plain and ordinary meaning and common usage of the language of the ordinance in determining intent, the district court misapplied the established decisional rules of statutory construction. Such misapplication is a clear basis of conflict.[1]
Further conflict is demonstrated with City of Miami Beach v. Royal Castle System, Inc., 126 So.2d 595, 597 (Fla.App.3d 1961) holding a Board of Adjustment for the City to be bound by the "ordinary and usual meaning of the term" in the statute unless differently defined in its own provision and applying a reasonable dictionary definition.[2]
The opinion under review, like the trial court's ruling, applied statutory construction which is in conflict with established principles in the decisional law of Florida in at least the following respects:
(a) In statutory construction, statutes must be given their plain and obvious meaning and it must be assumed that the legislative body knew the plain and ordinary meanings of the words.[3]
(b) Statutes or ordinances should be given that interpretation which renders the ordinance valid and constitutional.[4]
(c) Since zoning regulations are in derogation of private rights of ownership, words used in a zoning ordinance should be given their broadest meaning when there is no definition or clear intent to the contrary and the ordinance should be interpreted in favor of the property owner.[5]
Municipal ordinances are subject to the same rules of construction as are state statutes. Rose v. Town of Hillsboro Beach, 216 So.2d 258 (Fla.App.4th 1968); Jacksonville v. Ledwith, 26 Fla. 163, 7 So. 885 (Fla. 1890). Rose also stands for the substantive proposition that courts generally may not insert words or phrases in municipal ordinances in order to express intentions which do not appear, unless it is clear that the omission was inadvertent, and must give to a statute (or ordinance) *554 the plain and ordinary meaning of the words employed by the legislative body (here the City Council). Brooks v. Anastasia Mosquito Control District, 148 So.2d 64 (Fla.App.1st 1963).
In Maryland Casualty Co. v. Sutherland, 125 Fla. 282, 169 So. 679 (1936), dealing with judicial construction of the Workmen's Compensation Act, the Court states the first rule of statutory construction in a like manner:
"The legislative history of an act is important to courts only when there is doubt as to what is meant by the language employed." (Emphasis added.)
Where words used in an act, when considered in their ordinary and grammatical sense, clearly express the legislative intent, other rules of construction and interpretation are unnecessary and unwarranted. The intent of the North Miami City Commission in its enactment of the zoning ordinance in issue is to be determined primarily from the language of the ordinance itself and not from conjecture aliunde. A statute or ordinance must be given its plain and obvious meaning. See Marion County Hospital District v. Namer, 225 So.2d 442 (Fla.App.1st 1969), citing Maryland Casualty, supra.
This Court in Gay v. City of Coral Gables, 47 So.2d 529 (Fla. 1950), stated the rule that must be followed in determining intent of an ordinance:
"When the legislative intent is clear from words used in the enactment, courts are bound thereby and may not seek a meaning different from ordinary or common usage connotation of such words unless, upon a consideration of the act as a whole and the subject matter to which it relates, the court is necessarily lead to a determination that the legislature intended a different meaning to be ascribed to the language adopted by it."
Petitioner's property is within the principal industrial area of the City of North Miami, bound on all sides by industrial plants such as the Panelfab Manufacturing Plant and the Lehigh Concrete Batching Plant, and is within the last undeveloped part of this industrially zoned area which is not developed.
The fact that another company has a concrete batching plant already in operation right across the street from petitioner's proposed site is not mentioned below.
The only non-industrial use in the area is really one which has recently intruded into the previously heavily industrialized neighborhood. This is property of the principal objector who erected apartment buildings in a portion of this industrial center which was expressly rezoned from its previous industrial zoning classification to one for multiple family residential use, and thereupon this objector and developer proceeded to erect his apartment houses there.
Petitioner made its purchase in 1970 after a meticulous search for an appropriate site location which was compatible with its spacing of concrete batching plants to serve the needs of the areas served by the petitioner. The then officials of the City of North Miami Beach were expressly asked whether the intended use of the concrete batching plant by petitioner met the zoning requirements and gave an affirmative response which led to petitioner's purchase; only to have petitioner learn upon a change of administration that it was to be denied the building permit, the very purpose for which it had made the purchase. We do not hold that such inquiry gave petitioner a vested guarantee in the issuance of its permit, for times and conditions change. But it does reflect petitioner's good faith and reliance; it also shows what the true "intent" of the legislative body in question was as to the zoning use intended for the area, which is the principal point raised by petitioner as being violated *555 by the "interpretation" of the ordinance to arrive at a contrary intent.
The ordinance in question is § 29-42 of the City's zoning code setting forth the uses permitted in the zone in question, namely "industrial zoning district 3-A". (Ordinance 380.244) The code proceeds to set forth specifically 43 delineated zoning usages which cover the gamut of typical industrial use from "automobile wreckage service, storage yards ...", blacksmith shops, storage of gasoline, dredging machinery storage areas, fertilizer sales, power or steam laundries, stone cutting, welding, leather goods manufacture, and the category under which petitioner claims to fall:
"(29) Contractor's plants and/or storage yards, providing the area used is enclosed by a building or by a wall not less than 6 feet in height."
Application of the maxim expressio unius est exclusio alterius would demonstrate the consistency of petitioner's use with that of the 42 other uses set forth in this industrial grouping.
The doctrine of noscitur a sociis will similarly apply in not excluding the "batching" or mixing of ingredients for ready mix concrete in truck cylinders, from the type of products otherwise set forth in the ordinance. Carraway v. Armour and Co., 156 So.2d 494, 495 (Fla. 1963); and Rose v. Town of Hillsboro Beach, supra.
Petitioner seeks to install his "contractor's plant and storage yard" for a concrete mixing or "batching" plant where the ingredients of sand, rock and portland cement mix are "batched" into the revolving turrets of the typical concrete delivery truck which proceeds to the job while these ingredients are mixed as the turret (or drum) turns during the trip to its destination. The plant area is fully paved with a built-in wash down system; the aggregate is stored in enclosed silos and carried by an enclosed conveyor system, the entire operation being automated and enclosed.
There is no manufacture of heavy cement products. This is significant because the principal contention of the City and of the holdings below is that when Ordinance 380.244 was adopted in 1966, it deleted a phrase "cement products such as concrete blocks, pipe, etc."
The reasoning of the zoning director which is the basis for the rulings below, is that this quoted deletion meant that, "it also eliminated the manufacture of concrete as a permitted use." This is, of course, an interpretation completely at odds with the approval of a competitive "cement batching plant" already in operation across the street. The director put it that in his view "concrete was a product of cement and it made no difference in his opinion in what form it set up in." Of course concrete is the "set up" or end result of a "cement" mixture. The exception in the deletion from the ordinance which was pointed to by the director as direction for the intended meaning of the permitted use, only included cement products "SUCH AS concrete, pipe, etc." and there are no products, particularly no "such as" products involved in petitioner's use, nor contained in the permitted uses for a "contractor's plant and storage yard" in item 29. To inject such additional meaning into such words violates the statutory interpretation earlier pointed out in this opinion as the basis for conflict.
The distinction between "cement" and "concrete" is clear. The dictionary definitions of the two words draws the distinction: "Cement" is "a substance used in a soft state to join stones in building, to cover floors, etc., and which afterwards becomes hard like stone; any substance used for making bodies adhere to each other ...". On the other hand, "concrete" is defined as: "A concrete form or object ...; a mass formed by concretion or coalescence of separate particles of matter in one body; artificial stone made by *556 mixing cement and sand with gravel, broken stone, or other aggregate."[6]
This distinction between the two substances was apparently overlooked by the zoning director and City and may have been the cause of the fallacious reasoning that the deletion from item 29 of "concrete pipe, etc." was also a deletion of "cement" which, of course, is not the case.
As we understand the district court's reasoning, it founded its decision upon the fact that the language in the ordinance, "contractor's plants and/or storage yards" is not explicit enough to include a "concrete batching plant" which is this contractor's business, within the meaning of that language. The district court opinion does not suggest what the statutory "contractor's plants and/or storage yards" might mean, but simply stated that whatever it means, a concrete batching plant is not included in that meaning. The trouble with this position is that it leads to one of two contradictory results:
(1) either the permitted item 29 "contractor's plants ..." is meaningless because it does not specify a particular type of contractor as to any type of plant within the general industrial purport of the 43 items of industrial uses (since any contractor at all would meet with the same difficulty in that his particular business was not specified); or
(2) item 29 as to "contractor's plants ..." is open to whatever determination the zoning director and City of North Miami might from time to time choose to give to it, resulting in an arbitrary discretion and an inevitable resort to the courts in each instance. Such an unconstitutional result is not permitted where such contractors are not given equal treatment. The present case bears this out wherein it is clear from the record that the City has permitted all sorts of contractor's plants, some of which are identical and others of which are heavier industrial usage in the same area, one even being a Lehigh Concrete Batching Plant, yet has rejected the petitioner's batching plant.
The legislative intent with regard to item 29 in particular is clarified in the record from the statements of the City Council members who passed the ordinance and eliminated from number 29 any "cement products such as concrete blocks, pipe, etc.". One Commissioner and former Mayor stated:
"This action was directed at the Florida Litho-Bar Manufacturing Plant which manufactured pre-stressed concrete beams; culvert pipe; blocks and so forth. It was not a ready-mix batching plant. It was very noisy, very unsightly and was expanding even beyond the large size it had.
"The action of the Council in eliminating the manufacture of cement products such as `concrete blocks, pipe, etc.' in no way was meant to include elimination of the contractors plant and storage yard such as a cement batching plant where cement and aggregates are stored in silos; mixed together and placed in trucks for delivery to job sites."
Seldom do we have such evidence of the clear legislative intent of the change (deletion) upon which to rely and it should not be ignored.
The petition for certiorari is accordingly granted; the opinion of the district court is quashed with directions that the order of the circuit court denying relief be set aside and an order entered directing that the City of North Miami forthwith issue the building permit sought by petitioner.
It is so ordered.
CARLTON, C.J., and ROBERTS, ERVIN, ADKINS and DEKLE, JJ., concur.
NOTES
[1] Nielsen v. City of Sarasota, 117 So.2d 731 (Fla. 1960); Fla. Const., Article V, § 3(b) (3).
[2] Godson v. Town of Surfside, 150 Fla. 614, 8 So.2d 497 (1942); and Southern Bell Telephone and Telegraph Co. v. D'Alemberte, 39 Fla. 25, 21 So. 570 (1897).
[3] Rose v. Town of Hillsboro Beach, 216 So.2d 258 (Fla.App.4th 1968); Brooks v. Anastasia Mosquito Control Dist., 148 So.2d 64 (Fla.App.1st 1963); Maryland Casualty Co. v. Sutherland, 125 Fla. 282, 169 So. 679 (1936); Marion County Hospital District v. Namer, 225 So.2d 442 (Fla.App.1st 1969), citing Maryland Casualty, supra; Godson v. Town of Surfside, 150 Fla. 614, 8 So.2d 497 (Fla. 1942); Gay v. City of Coral Gables, 47 So.2d 529 (Fla. 1950); Union Trust Co. v. Lucas, 125 So.2d 582 (Fla.App.2d 1960); and State ex rel. Lacedonia v. Harvey, 68 So.2d 817 (Fla. 1953).
[4] Owen v. Cheney, 238 So.2d 650 (Fla.App.2d 1970); Rotenberg v. City of Fort Pierce, 202 So.2d 782 (Fla.App.4th 1967); City of Eau Gallie v. Holland, 98 So.2d 786 (Fla. 1957).
[5] See footnote 3.
[6] Webster's Dictionary, Fifth Edition.