385 So.2d 184 (1980)
HALIFAX AREA COUNCIL ON ALCOHOLISM, and Serenity House, Inc., a Florida Corporation, Appellants/Cross Appellees,
v.
CITY OF DAYTONA BEACH, a Political Subdivision of the State of Florida, Appellee/Cross Appellant.
No. 79-21.
District Court of Appeal of Florida, Fifth District.
July 9, 1980.
*185 Fred S. Disselkoen, Jr., Ormond Beach, for appellants/cross-appellees.
Gregory J. McDole, Daytona Beach, for appellee/cross-appellant.
FRANK D. UPCHURCH, Judge.
This is an appeal from an order of the Circuit Court for Volusia County which denied appellant's petition for a permanent injunction and writ of mandamus.
Appellant, Serenity House, is a non-profit corporation involved in the rehabilitation of sober alcoholics. It operates out of a house *186 located at 547 High Street in the City of Daytona Beach. The property is zoned "B-P" (Business-Professional).
In August, 1978, the Director of Serenity House applied to the City for a certificate of occupancy. This application was denied, with the City's Chief Building Official contending the use was improper in the particular zone unless limited to daylight hours, with sleeping on the premises prohibited, and certain parking requirements satisfied. The director was referred to the City Planning Board and City Commission and advised to apply for a semi-public use permit. This application was made and denied by the Board and City Commission. Serenity House was then ordered to vacate the premises.
Serenity House then brought the instant action. The trial court denied relief finding that Serenity House's operation is not a permitted use, nor a "similar use" permitted in a "B-P" zone. The court found that Serenity House failed to exhaust its administrative remedies, but held it was nevertheless properly before the court. It also found that the zoning restrictions placed upon Serenity House were not arbitrary or unreasonable. The City has cross appealed on the question of exhaustion and this issue merits our initial consideration.
While the trial court held that Serenity House did not exhaust its administrative remedies it stated that no useful purpose would be served by remanding the case to the City's Board of Adjustment.[1] As a general proposition, where an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the court will act. 1 Fla.Jur.2d Administrative Law § 147 (1977). See also DeCarlo v. Tower of West Miami, 49 So.2d 596 (Fla. 1950); Brooks v. School Board of Brevard County, 382 So.2d 422 (Fla. 5th DCA 1980); Hennessy v. City of Fort Lauderdale, 101 So.2d 176 (Fla.2d DCA 1958). In the instant case, the City relies upon Skaggs-Albertson's P., Inc. v. Michels Belle. Bl. P., Inc., 332 So.2d 113 (Fla.2d DCA 1976). This case involved a suit by nearby property owners to enjoin construction of a drugstore alleged to be in violation of a zoning ordinance. Appellees had filed written objections with the city and after five days of inaction, sued for injunctive relief. The court held that appellee's failure to wait for the city's Board of Adjustment to act required the suit be dismissed without prejudice. The court declared that the assertion that the Board would have rubber-stamped the decision did not obviate the need to exhaust administrative remedies. Unlike in Skaggs, Serenity House went through a two step administrative process and the City Commission, the ultimate administrative arbiter, accepted and ruled upon its appeal without requiring Board disposition.
In City of Miami v. Sunset Island, 216 So.2d 509 (Fla.3d DCA 1969), the Third District recognized there is no requirement that one exhaust his administrative remedies prior to seeking mandamus where it is apparent that such a gesture would be futile. In the instant case, the trial court recognized this principle and specifically found that no useful purpose would be served by allowing the Board of Adjustment to consider the matter because the Planning Board and the City Commission had already ruled adversely to appellant. See also Town of Orange Park v. Kager, 351 So.2d 402 (Fla. 1st DCA 1977). We also note that not only did the ultimate administrative body, the City Commission, rule on the matter without requiring a Board determination, but appellant received a potentially misleading letter from the City Building Official. The letter advised appellant that the contemplated use was a "special use" under the ordinance and that it would be necessary for appellant to apply to the "Planning Board and City Commission" for approval. We therefore agree with the trial court that no useful purpose would have been served by visiting an inferior administrative body after the ultimate administrative body, the City Commission, had ruled.
*187 The next question is whether the "Serenity House" operation is a "professional service" or a "similar use" permitted in the "B-P" zoning classification.[2] We have concluded that it is and reverse.
Appellant contends that Serenity House is a "professional service"[3] as a "consultant in a related field." As a broad proposition, since zoning regulations are in derogation of private rights of ownership, they should be interpreted in favor of the property owner. Rinker Materials Corp. v. City of North Miami, 286 So.2d 552 (Fla. 1973). In addition, they are subject to the same rules of construction as are state statutes. Id.
The principle of ejusdem generis may be applied to aid in the construction of the ordinance. Under this rule, where the enumeration of specific things is followed by a more general word or phrase, the general phrase is construed to refer to a thing of the same kind or species as included within the preceding and more confining terms. However, the rule does not necessarily require that the general provision be limited in its scope to the identical things specifically named, otherwise it would render the subsequent general phrase entirely inoperative. 30 Fla.Jur. Statutes § 92 (1974); Childrens Bootery v. Sutker, 91 Fla. 60, 107 So. 345 (1926). Consideration must therefore be given to the details of the Serenity House operation.
Under the rehabilitation program, four to ten people reside on the property at any given time and stay for varying periods of up to six months. Meetings are held periodically on the premises and counseling service is available twenty-four hours a day with services provided without cost to those unable to pay. The director holds an occupational license as an alcoholism counselor but this license does not require any specialized knowledge requiring intensive academic preparation[4] and anyone who wishes may obtain the license and operate as such. If the director were a psychiatrist, psychologist, osteopath, chiropractor or physician, operating in an identical manner for the identical purpose, the conclusion is inescapable that it would be a permitted use. The City reasons that because the director is not a professional, as defined in Webster's, the service that he is rendering is not a "professional service." Zoning can only control the use of land and does not have as its function to inquire into the qualifications of the operator. The record does not reflect that this operation would be offensive, or less efficiently operated, or less effective if operated by Serenity House as opposed to a doctor of medicine.
Rinker Materials Corp. v. City of North Miami, 286 So.2d 552 (Fla. 1973), is instructive for it concerned a zoning classification in which "contractor's plants and/or storage yards" was a permitted use. Rinker Corporation planned to erect a concrete mixing plant. The court held, after considering the character and quality of other permitted uses within the zone that the language "contractor's plant" was sufficiently broad to include a concrete mixing plant.
It is especially persuasive that the catch-all phrase "and similar uses" must include the contemplated use, because it is designed to cover contingencies for particular uses which are not described in the comprehensive zoning ordinance. Sunset Island at 512. In the case before us, the City Building Official testified that, "there is no real definite zone that allows this." There being no zone which specifically permits this use, it is then incumbent upon the *188 City to permit the activity within the zone most nearly applicable.
The "B-P" zone permits "professional services, boarding houses, motels, and restaurants." None of the activities contemplated by appellant are inconsistent or incompatible with those specifically permitted. No other zoning classification defines activities more comparable to those planned by appellant. We therefore conclude that the lower court was in error in determining that the use was not permitted in the "B-P" zone.
Since we find this to be a permissible use, remand to the trial court is necessary for a determination as to whether regulations applicable to uses in the "B-P" zone have been met, especially those relating to parking,[5] overnight sleeping and food service.
Affirmed in part, reversed and remanded in part.
DAUKSCH, C.J., and SHARP, J., concur.
NOTES
[1] Article 21, section 7.1 of the City Zoning Ordinance requires that the Board shall hear appeals from alleged errors in determinations by the City's Chief Building Official.
[2] Article 14, section 1.1.1 of the City's Zoning Ordinance provides what uses are permitted in a "B-P" district:

Apartments, hotels, motels, professional services, personal services, business services, type A-1 restaurants, clubs, lodges, and similar uses.
[3] "Professional Service" is defined in Article 3 of the ordinance to mean:

The conduct of business in any of the following related categories: law, architecture, engineering, medicine, dentistry, osteopaths, opticians, chiropractors or consultants in these or related fields.
[4] Webster's New Collegiate Dictionary, p. 911 (ed. 1979). Profession  A calling requiring specialized knowledge and often long and intensive academic preparation.
[5] A parking variance was granted to the property owner in 1971. It is the general rule that a grant of a variance runs with the land and is not a personal license given to the landowner. See, e.g., State v. Konopka, 19 Ohio App. 513, 200 N.E.2d 695 (1963); 8 McQuillen, Mun.Corp. § 25.163. This rule is based on the view that zoning ordinances have reference to land use rather than to the persons who own the land. State v. Konopka. It should be noted that in the instant case, the city has failed to show that any significant change in the use of the variance will result from Serenity House's operation. See, e.g., City of Miami Beach v. Arlen King Cole Condominium Association, Inc., 302 So.2d 777 (Fla.3d DCA 1974).