PER CURIAM.
The Village of Key Biseayne [Village] appeals a final judgment in favor of Metropolitan Dade County [County] and the Marine Exhibition Corporation [MEC] [collectively “defendants”]. We reverse.
MEC leases County-owned property on Virginia Key. The lease allows MEC to develop the property if it obtains the required permits. The property is designated as “Parks and Recreation” in the County’s Comprehensive Development Master Plan [CDMP]; the Miami Seaquarium is on the property. In 1991, MEC filed requests for various zoning variances and special exceptions to develop commercial amusement and entertainment facilities [Project] on the property. The Project will require demolition of most existing Seaquarium structures to enable construction of four components: a marine-life park, a water theme park, an environmental theater, and a restaurant/nightclub. The County Commission approved MEC’s requests.
The Village, located three miles east of the property, sought an injunction against the development of the Project, and an order setting aside the County’s approval of the Project, asserting that the Project violated the CDMP’s Land Use Element.[1] Upon conclusion of the trial, the court entered a final judgment in defendants’ favor. Village appeals.
The CDMP provides for commercial uses on property classified as “Parks and Recreation” under limited circumstances:
Certain commercial activities that are supportive of the recreational uses and complementary to the resources of the park, such as marine supply stores, fuel docks or tennis and golf club houses may be considered for approval in the Parks and Recreation category. Other commercial, recreational or entertainment, or cultural uses may also be considered for approval in the Parks and Recreation category where complementary to the site and its resources.
CDMP, at 1-21 (1991) (emphasis added). The issue in this case is how to interpret the phrase “complementary to the site and its resources.” Defendants assert that the phrase requires the Project to be complementary to the site’s man-made structures. The Project, defendants propose, enhances and augments the Seaquarium; thus it is complementary to the Seaquarium. Village argues that the phrase requires that the Project be complementary to the site, as it exists naturally.
The trial court, applying defendants’ construction, determined that “the components of the Project are sufficiently integrated to meet the ‘complementary’ criteria.” (Emphasis added). In its conclusions of law the trial court stated that the “components of the Project will be supportive of the Marine Life Park and its manmade [sic] resources through implementation of a common water-related theme, marine orientation, Project design and architecture, central parking area, and central Project entrance, among other things.”
We reverse the final judgment. We hold that the trial court incorrectly determined that the Project was “complementary” to the existing Seaquarium facilities. The CDMP’s provision must be given its plain and ordinary meaning, see Rinker Materials Corp. v. City of North Miami, 286 So.2d 552, 553 (Fla.1973), and it must be assumed that the CDMP’s promulgators knew the plain and ordinary meaning of the words they utilized. Rinker Materials Corp., 286 So.2d at 553. Where the words used in an act clearly express the legislative intent no other rules of construction or interpretation are necessary or warranted. Rinker Materials Corp., 286 So.2d at 554. The CDMP’s plain language states that satisfae *1182 tion of the CDMP’s Land Use Element rests on whether the Project will be complementary to the natural resources of the park upon which the proposed construction is to be located, not to the existing structures thereon.
Webster’s Third New International Dictionary, Unabridged, 464 (1986), defines complementary as “of, relating to, or suggestive of complementing, completing, or perfecting.” Complement is defined as “something that fills up or completes: as a: something that fills out and makes perfect: a completing or consummating part, integral, or compo-nent_” Webster’s Third New International Dictionary, Unabridged, 464 (1986). These definitions would suggest that the Project does not qualify as “complementary” to the site under either party’s suggested reading of the CDMP provision: the Project is not needed to fill up or complete the natural coastline location of the parcel in question, and the Project will not fill up or complete a Seaquarium facility which must be razed to facilitate Project construction.
Our construction is supported by the suggestions enumerated in the CDMP, which exemplify the uses contemplated by the drafters as complementary “to the resources of the park.” A marine supply store would complete or perfect a park marine recreational facility. A fuel dock would similarly complete or perfect such a facility. A tennis or golf clubhouse would also complete such park facilities. Nowhere do these suggested uses imply creation of an entirely new structure to augment or enhance existing structures.
“This court has recognized that developments challenged as contrary to master plans must be strictly construed and that the burden is on the developer to show by competent and substantial evidence that the development conforms strictly to the master plan, its elements, and objectives.” White v. Metropolitan Dade County, 563 So.2d 117, 128 (Fla. 3d DCA 1990); Machado v. Musgrove, 519 So.2d 629, 635 (Fla. 3d DCA 1987), review denied, 529 So.2d 693 (Fla.1988). The record does not establish that the Project conforms strictly to the CDMP’s requirements.
The testimony offered at trial to the effect that the Project would be an “ancillary use” to the Seaquarium does not support the trial court’s finding that the use will be complementary to the site. Moreover, it is difficult to fathom how the Project can be construed as an ancillary use to the existing Seaquarium, or how it would be supportive of the “marine life park and its man-made resources,” when the Project will require demolition of practically all existing Seaquari-um structures. Obviously, those structures are not complementary to the Project. This construction stretches the limits defining “complementary.”
Based on the foregoing reasoning, we are unable to affirm the trial court’s judgment. There is no competent and substantial evidence to demonstrate that the Project will satisfy the CDMP’s Land Use Elements and objectives for commercial uses within parks and recreation-designated areas. White. The final judgment is therefore reversed.
Reversed.

. The Land Use Element of the CDMP "identifies locations in Dade County where various land uses and intensities of use will be permitted to occur in the future.” The Land Use Element's
growth policy includes, among other intents, that physical expansion of the urban area should be managed to occur 1) at a rate commensurate with projected population and economic growth; 2) in a contiguous pattern centered around a network of high-intensity activity centers well connected by multimodal in-traurban transportation facilities; and 3) in locations which optimize efficiency in public service delivery and conservation of valuable natural resources.