RAMIREZ, J.
 

 Sabrina Angelino appeals the court’s entry of a temporary injunction and imposition of a constructive trust. We reverse, because entry of the injunction lacks specific findings of facts and is overly broad, and there is no basis for the imposition of a constructive trust.
 

 Angelino and Santa Barbara Enterprises, LLC, each own a fifty percent interest in Starbridge Networks, LLC, which sells telecommunications products and related technical services to telecommunications operators in Latin America, the Caribbean, and selected markets in the United States. Enrique Diaz, a third party plaintiff, is the owner of the other fifty percent interest in Starbridge Networks.
 

 Diaz is the CEO of Starbridge Networks. He is responsible for the company’s operations, strategic planning, and financing, as well as working with its customers and suppliers. Angelino was responsible for managing Starbridge Networks’ sales in Venezuela.
 

 Angelino and Diaz conducted Starbridge Networks’ sales in Venezuela through a Venezuelan company called Starbridge Interactive Group, C.A. (“SIG”). Angelino is the President and sole owner of SIG, which had been incorporated almost a year before Starbridge Networks. Through an inter-company service agreement between the two companies, SIG served as Star-bridge Networks’ sales and marketing representative in Venezuela and as a conduit for orders from Starbridge Networks’ Venezuelan customers. SIG also provided technical support to Starbridge Networks’ Venezuelan customers.
 

 Angelino moved to dissolve and liquidate Starbridge Networks because of a deadlock in the management of Starbridge Networks. She named Santa Barbara and Starbridge Networks as defendants. An-gelino filed a separate lawsuit against Starbridge Networks to recover funds she claims were due to SIG under the inter-company service agreement between Star-bridge Networks and SIG. Both actions were subsequently consolidated in the underlying lawsuit. Diaz and Santa Barbara filed a counterclaim against Angelino claiming that Angelino usurped corporate opportunities belonging to Starbridge Networks. In particular, Diaz and Santa Barbara allege that Angelino and her husband set up two competing companies, SILA Networks, LLC and SILA Networks, C.A., through which they usurped business opportunities that belong to Starbridge Networks. Diaz and Santa Barbara also allege that Angelino interfered with Star-bridge Networks’ relationships with its customers and suppliers.
 

 In its order, the trial court found that Angelino, through SILA networks, competed and interfered with Starbridge Networks’ business relationships in Venezuela. Specifically, the trial court found that An-gelino competed and interfered with the business relationships of two companies named CANTV and TTIC. TTIC is the
 
 *1103
 
 design and development company Star-bridge Networks used in connection with its customer relationship with CANTV, Venezuela’s national telecommunications company.
 

 The trial court, in paragraph 11 of the injunction, stated that “[mjovants have show [sic] a likelihood of success on the merits in this case based on the corporate opportunity doctrine and breach of fiduciary duties by, including but not limited to, competing with Starbridge for its Venezuelan customers and suppliers, particularly CANTV and TTIC.” In paragraph 12, the trial court continued “[n]o adequate remedy at law exists to compensate for the damage caused by her alleged usurpation of business opportunities, interference with Starbridge’s customers and suppliers and their goodwill and profits thereform.” In paragraph 13, the trial court stated “Star-bridge -will be irreparably harmed by the continued activities of Angelino with regard to these matters.”
 

 The trial court enjoined Angelino, both individually and as an employee of SILA Networks LLC, her agents, servants, employees and attorneys from: (a) competing against Starbridge Networks; (b) usurping Starbridge Networks’ business opportunities, customers and suppliers (including TTIC); (c) using Starbridge Networks’ proprietary information and technology; and (d) interfering with Starbridge Network’s relationships with its customers and suppliers, including through the use of derogatory comments about Starbridge Networks, its officers, managers or employees.
 

 The trial court also imposed a constructive trust. The trust encompassed any purchase orders, contracts or other business that Angelino, her agents, servants, employees and attorneys, may have obtained from Starbridge Networks’ customers.
 

 The standard of review in this appeal is abuse of discretion.
 
 See Richard v. Behavioral Healthcare Options, Inc.,
 
 647 So.2d 976, 978 (Fla. 2d DCA 1994). A temporary injunction should only be granted where there is a showing of (1) the likelihood of irreparable harm and the unavailability of an adequate remedy at law; (3) the substantial likelihood of success on the merits; (3) the threatened injury to the petitioner outweighs any possible harm to the respondent; and (4) the entry of the injunction will not disserve the public interest.
 
 Id.; Cosmic Corp. v. Miami-Dade County,
 
 706 So.2d 347, 348 (Fla. 3d DCA 1998).
 

 The entry of a temporary injunction, however, will not stand unless the trial courts makes specific findings in support of each and every element required for the entry of the injunction. Florida Rule of Civil Procedure 1.610 sets forth the form and scope requirements for the entry of a temporary injunction. Every temporary injunction must specify the reasons for its entry, and it must describe in reasonable detail the act or acts to be restrained.
 
 See
 
 Fla. R. Civ. P. 1.610(c).
 

 The temporary injunction here lacks the necessary findings in support of the four-prong test set out in
 
 Cosmic
 
 and is inconsistent with the requirements of rule 1.610. A temporary injunction that merely recites legal conclusions is insufficient to support its entry.
 
 See City of Jacksonville v. Naegele Outdoor Adver. Co.,
 
 634 So.2d 750, 753-54 (Fla. 1st DCA 1994). In
 
 Naegele,
 
 the First District Court of Appeal reiterated that an order which grants a temporary injunction must contain “more than conclusory legal aphorisms.”
 
 Id.
 
 “Clear, definite, and unequivocally sufficient factual findings must support each of the four conclusions necessary to justify entry of a preliminary injunction.”
 
 Id.; Bellach v. Huggs of Naples,
 
 
 *1104
 

 Inc.,
 
 704 So.2d 679, 680 (Fla. 2d DCA 1997);
 
 Richard v. Behavioral Healthcare Options, Inc.,
 
 647 So.2d 976, 978 (Fla. 2d DCA 1994). The temporary injunction is thus defective.
 
 See Naegele,
 
 634 So.2d at 753-54;
 
 Bellach,
 
 704 So.2d at 679;
 
 Richard,
 
 647 So.2d at 978.
 

 Furthermore, the temporary injunction here is overly broad and cannot stand on this basis. Injunctions must be specifically tailored to each case and they must not infringe upon conduct that does not produce the harm sought to be avoided.
 
 See Clark v. Allied Assocs., Inc.,
 
 477 So.2d 656, 657 (Fla. 5th DCA 1985). In
 
 Clark,
 
 the Fifth District stated:
 

 An injunctive order should never be broader than is necessary to secure the injured party, without injustice to the adversary, relief warranted by the circumstances of the particular case. The order should be adequately particularized, especially where some activities may be permissible and proper. Such an order should be confined within reasonable limitations and phrased in such language that its requirements can be met, without resert to portions of the record or facts outside the ‘four corners’ of the injunction itself. One against whom an injunction is directed should not be left in doubt as to what he is required to do.
 

 Id.
 
 at 657-58 (citations omitted). The district court determined that the language of the injunction did not designate with adequate particularity the acts or things enjoined against.
 
 Id.
 
 The district court then quashed the injunction which enjoined the defendant from making, using, or selling motorized equipment.
 
 Id.
 

 As in
 
 Clark,
 
 the temporary injunction here fails to designate with sufficient particularity the acts or things enjoined against. The trial court enjoined Angelino from competing against Starbridge Networks. But there is no mention of any acts that may be considered competitive in nature. The trial court enjoined Angelino from usurping Starbridge Networks’ business opportunities, customers, and suppliers. There is no mention, however, of any customers and suppliers with whom Angel-ino may not compete. The trial court also enjoined Angelino from the use of Star-bridge Networks’ proprietary information and technology. There is no mention of any specifics upon which Angelino can rely to determine what information and technology he cannot use. This type of vague language is precisely the type that the district court contemplated in
 
 Clark,
 
 and we cannot uphold to support the entry of a temporary injunction.
 

 The portion of the temporary injunction in which the trial court imposed a constructive trust is likewise overly broad. The trial court failed to mention with sufficient particularity “what purchase orders, contracts, or other business” Angelino is obligated to hold in a constructive trust. Angelino is left in doubt as to what he is required to do to comply with the trial court’s directives. This portion of the injunction is thus defective.
 
 See Clark,
 
 477 So.2d at 658 (stating that “[o]ne against whom an injunction is directed should not be left in doubt as to what [they are] required to do”).
 

 Because we are remanding this matter for further proceedings, we also mention that, on the record before us, Angelino’s argument on standing is persuasive. As we stated in
 
 Chaul v. Abur-Ghazaleh,
 
 994 So.2d 465, 467 (Fla. 3d DCA 2008), shareholders of a corporation have no standing to bring a direct action for injuries allegedly suffered by the corporation, (citing
 
 Alario v. Miller,
 
 354 So.2d 925, 926 (Fla. 2d DCA 1978)). Thus, Santa Barbara’s claim against Angelino would
 
 *1105
 
 have to be brought as a derivative action. Diaz has no claim at all, being only an officer of Starbridge Networks. Santa Barbara may not sue directly for an injury sustained by Starbridge Networks as to which Santa Barbara’s only claim is that Angelino usurped corporate opportunities belonging to Starbridge Networks. Furthermore, the counterclaim and the injunction that followed are premised on Angeli-no owing a fiduciary duty to Starbridge Networks. We are not convinced that An-gelino owed such a duty in her role as stockholder of Starbridge Networks. This is a case where a shareholder, through a pre-existing corporation, is competing against Starbridge Networks in the marketplace.
 

 For the foregoing reasons, we reverse the entry of the temporary injunction, and the imposition of a constructive trust.