# Third District Court of Appeal

## State of Florida

Opinion filed December 5, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-1213
Lower Tribunal No. 17-8999
_____

**City of Miami,**
Appellant,

vs.

**AIRBNB, Inc., etc., et al.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Beatrice Butchko, Judge.

Victoria Mendez, City Attorney, and John A. Greco, Deputy City Attorney, and Christopher A. Green, Assistant City Attorney, for appellant.

Berger Singerman LLP, and Mitchell W. Berger, Paul S. Figg, Paul A. Avron, and Fred O. Goldberg (Fort Lauderdale), for appellees.

Holland & Knight LLP, and Frances Guasch De La Guardia; Craig E. Leen, City Attorney, as amicus curiae for City of Coral Gables.

Before LAGOA, LOGUE, and LINDSEY, JJ.

LOGUE, J.

The City of Miami appeals the trial court's order granting the plaintiffs' emergency motion for temporary injunction. We conclude that Plaintiffs, Airbnb, Inc., Yamile Bell, Ana Rubio, Gary M. Levin, Toya Bowles, and Kenneth J. Tobin, have not met the elements for the broad temporary injunction entered by the trial court. Accordingly, we reverse.

Background

Airbnb, Inc., is an online hosting platform that matches guests with short-term rentals in different parts of the world, including Miami. At a March 2017 City Commission meeting, the City of Miami adopted a resolution on short-term rentals. The resolution was based on (1) the City Of Miami's zoning ordinance, Miami 21, which limits the T3 zone to permanent residential use, and (2) the City's 2015 Zoning Interpretation of Miami 21 that declares "using a Single Family residence or Two Family-Housing (a duplex) within a T3 transect zone to provide rental accommodations per night, week, or anything less than one month would constitute an activity in violation of Miami 21."

The resolution affirmed the City's zoning regulations "as they pertain to short-term/vacation rentals" and "direct[ed] the City Manager to continue vigorously enforcing regulations pertaining to lodging uses." In attendance at the Commission meeting were several City residents who opposed the resolution

2

because they use the Airbnb platform to rent out their properties. The City Manager informed attendees that the City was "now on notice" of those who spoke out against the City's code, and that he "will be duly bound to request our personnel to enforce the city code."[1]

After the Commission meeting, Airbnb and several City residents who rent their properties through Airbnb sued the City for declaratory and injunctive relief. They asserted that the City's vacation rental ban in its suburban residential T3 zone was preempted by State law. The complaint also alleged that the City Manager and Mayor expressed an intent to retaliate against the individuals who spoke in support of vacation rentals at the City Commission meeting. Accordingly, the complaint also sought to enjoin the City from initiating code enforcement proceedings against those individuals, and from requiring the names and addresses of those who wish to speak at Commission meetings. Plaintiffs then filed an emergency motion for temporary injunction which mirrored the complaint's request for injunctive relief.

On April 19, 2017, the trial court held an evidentiary hearing on the motion for temporary injunction. At the hearing, an Airbnb representative testified that Airbnb was being unfairly targeted by the City. And three of the individual

---

[1] The parties stipulated to several comments made by the City Manager and Mayor, including the mayor's statement that the speakers "were putting themselves in harm's way by officially, publicly, on the record saying that they are violating the code of the City of Miami."

plaintiffs who reside in the T3 zone explained the nature of the short-term rentals they offer through Airbnb.[2]

The City's planning director testified that the T3 zone was reserved for permanent housing and did not permit transient lodging. He explained, "It is the transient nature of the accommodation that makes it a lodging use, as opposed to the permanent residence nature of the use that makes it a single family dwelling." The City also presented the testimony of T3 zone residents who described negative experiences from living close to short-term rentals.[3] And finally, the City Clerk testified regarding the City's practice in obtaining the names and addresses of individuals who speak at City Commission meetings.

At the end of the hearing, the trial court granted Plaintiffs' motion for temporary injunction. It concluded that Miami 21 does not prohibit vacation rentals and the City was therefore preempted under section 509.032(7)(b), Florida

---

[2] All three testified that they reside in the properties. Two testified they sometimes move out temporarily and rent the entire property for short periods of time, while one testified that she rents out only a room. They estimated but did not know for any given year the exact number of rentals, guests per rental, or days per rental. For example, when asked on cross-examination how many days he rented his property in 2015, Kenneth Tobin testified, "I don't know the exact number of days, no." Similarly when asked on cross-examination how many days she rented her property, Yamile Bell testified "I don't have that number," but it was "more than 30 times."

[3] For example, one City resident testified that the owner of a single family house next to his home rented bunkbeds to as many as twenty persons at a time, thereby creating a nuisance.

Statutes (2016) from enforcing its Zoning Interpretation and pronouncing any ban on short-term vacation rentals. Regarding the statements made by the City Manager and Mayor, the trial court found no evidence of retaliation. But it did find that the statements "have a chilling effect on the First Amendment rights of residents who wish to make public comments on any matter before the City Commission."

The temporary injunction enjoins the City in two respects. First, it enjoins the City from "enforcing any ban on or from instituting or enforcing its vacation rental ban in the City pending a final hearing . . . which would include any enforcement against the individual Plaintiffs." Second, it enjoins the City from "requiring members of the public, as a condition of their right to make public comment at City Commission meetings, from having to provide their names and addresses, and that agents of the City shall advise residents that, if they wish to remain anonymous, they will still be allowed to speak." The City timely appealed.

<u>Analysis</u>

"A temporary injunction is an extraordinary remedy which should be granted only sparingly." <u>Mercado Oriental, Inc. v. Marin</u>, 725 So. 3d 468, 469 (Fla. 3d DCA 1999). A party moving for the temporary injunction must therefore demonstrate: "(1) the likelihood of irreparable harm if the temporary injunction is not entered; (2) the unavailability of an adequate remedy at law; (3) a substantial

likelihood of success on the merits; and (4) entry of the temporary injunction will serve the public interest." <u>Genchi v. Lower Fla. Keys Hosp. Dist.</u>, 45 So. 3d 915, 918-19 (Fla. 3d DCA 2010). If the party seeking a temporary injunction fails to meet any of these requirements, the motion must be denied. <u>Id.</u>

Moreover, "[i]njunctions must be specifically tailored to each case and they must not infringe upon conduct that does not produce the harm sought to be avoided." <u>Angelino v. Santa Barbara Enterprises, LLC</u>, 2 So. 3d 1100, 1104 (Fla. 3d DCA 2009). In other words, injunctions "should never be broader than is necessary to secure to the injured party relief warranted by the circumstances involved in the particular case." <u>Chevaldina v. R.K./FL Mgmt., Inc.</u>, 133 So. 3d 1086, 1091 (Fla. 3d DCA 2014).

Here, based upon the limited record before us, we conclude that Plaintiffs have failed to show that they have a substantial likelihood of success to sustain such broad injunctions.

A. <u>The injunction against the City's "vacation rental ban" is overbroad.</u>

Miami 21 is not preempted by State law because it places land-use restrictions on all properties located in the T3 zone, which include properties used as short-term or vacation rentals. The injunction here fails to recognize that under certain circumstances, Miami 21 may prohibit short-term or vacation rentals in T3. For that reason, we conclude that the injunction is overbroad and must be reversed.

The preemption statute at issue prohibits a local government from banning or regulating vacation rentals: "A local law, ordinance, or regulation may not prohibit vacation rentals or regulate the duration or frequency of rental of vacation rentals." § 509.032(7)(b). A "vacation rental" is a "condominium" or a "house or dwelling unit" rented on a transient basis.[4]  But the preemption "does not apply to any local law, ordinance, or regulation adopted on or before June 1, 2011." Id.  The undisputed testimony at the hearing was that the 2016 version of Miami 21 is identical in its material provisions to the zoning code in effect in 2009.

Miami 21 places the City's core, single family neighborhoods in its T3 zone. The T3 zone is labeled "sub-urban," and the only use allowed by right is

[4] The legislature  defined a "vacation rental" as

> any unit or group of units in a condominium or cooperative or any individually or collectively owned single-family, two-family, three-family, or four-family house or dwelling unit that is also a transient public lodging establishment but that is not a timeshare project.

§ 509.242(c), Fla. Stat. (2017) (emphasis added). "Transient public lodging establishment"

> means any unit, group of units, dwelling, building, or group of buildings within a single complex of buildings which is rented to guests more than three times in a calendar year for periods of less than 30 days or 1 calendar month, whichever is less, or which is advertised or held out to the public as a place regularly rented to guests."

§ 509.013(4)(a)(1) (emphasis added).

7

"residential." § 1.1, § 4, tbl.3, Miami 21. "Residential" is defined by Miami 21 as "land use functions <u>predominantly of permanent housing</u>." § 1.1 (emphasis added).

Because a vacation rental is not permanent housing—it is a short-term rental intended to serve as a guest's transient housing—Miami 21 prohibits short-term and vacation rentals in T3 that convert a property's use to something other than "predominantly of permanent housing." For example, a property owned by investors and used solely for short-term or vacation rentals would never be permitted in T3 because it does not constitute a use "predominantly of permanent housing." On the other hand, "<u>predominantly</u> of permanent housing" does not mean "<u>exclusively</u> of permanent housing." So where a T3 property's use remains predominantly of permanent housing, a mere incidental use for a short-term or vacation rental may not violate Miami 21.

As this discussion indicates, we conclude that to the extent the City's 2015 Zoning Interpretation goes beyond the restrictions in Miami 21, the Interpretation is preempted under section 509.032(7)(b). As previously noted, the City's Zoning Interpretation declares that "using a Single Family residence or Two Family-Housing (a duplex) within a T3 transect zone to provide rental accommodations per night, week, or anything less than one month would constitute an activity in Violation of Miami 21." This Zoning Interpretation suggesting a ban on all short-

8

term rentals is itself overbroad because a short-term rental may not always alter a property's use as "predominantly of permanent housing."

In any event, the trial court here failed to recognize that Miami 21 is not preempted and prohibits certain short-term rentals that compromise the residential characteristic of T3 properties. We recognize that this "predominantly of permanent housing" analysis may create a fact-intensive, case-by-case inquiry. But the trial court here made no distinction between the types of rentals that may be permitted under Miami 21 and those that may violate the zoning restriction.

In so holding, we have not overlooked the issue of whether Airbnb's short-term or vacation rentals constitute a "lodging" use under Miami 21. Miami 21's definition of "lodging" includes "Bed & Breakfast," "Inn," and "Hotel," all of which are not permitted in T3. Under Miami 21, the "lodging" use category is

> intended to encompass land [u]se functions predominantly of sleeping accommodations occupied on a rental basis for limited periods of time. These are measured in terms of lodging units: a lodging unit is a <u>furnished room</u> of a minimum two hundred (200) square feet that includes sanitary facilities, and that may include limited kitchen facilities.

§ 1.1(b) (emphasis added). "Lodging Unit" is further defined in Miami 21 as "living quarters comprised of <u>furnished room</u>(s) . . . not qualifying as a Dwelling Unit or efficiency apartment; occupied by transients on a rental or lease basis for limited periods of time." § 1.2 (emphasis added). Generally speaking, therefore,

9

"lodging" under Miami 21 concerns the transient rental of "furnished rooms," like the typical room rented in a hotel, inn, or bed and breakfast. Due to the varied nature of the Airbnb rentals, we note that some rentals may qualify as lodging and some may not. Resolution of this issue cannot be made based upon the limited record before us, and it is not necessary to our holding.

The trial court limited the evidence to facts concerning the Airbnb platform and rentals by the individual plaintiffs, but it entered a very broad injunction that applied to all rental platforms and to all rentals in the T3 district. For the reasons discussed above, the temporary injunction framed by the trial court–to ban the City from prohibiting any vacation or short-term rentals in the T3 zone–is overbroad. We therefore vacate this part of the injunction.

B. <u>The injunction enjoining the City from requiring speakers at public hearings to give their names and addresses is overbroad.</u>

We also conclude that the second part of the trial court's injunction against the City is overbroad. As noted above, the trial court's order enjoins the City from "requiring members of the public, as a condition of their right to make public comment at City Commission meetings, from having to provide their names and addresses, and that agents of the City shall advise residents that, if they wish to remain anonymous, they will still be allowed to speak." This injunction was based on the trial court's concern that comments by the City Mayor and Manager signaled an intent to take heightened enforcement measures against property

10

owners who spoke in favor of vacation rentals thereby chilling the owners' rights to free speech. Assuming such a concern was well taken, we hold that the remedy framed by the trial court–to ban the City from requiring public speakers from providing their names and addresses at all public hearings including hearings not involved in vacation rentals in residential neighborhoods–casts too wide a net.

There are many instances in which it is beneficial for a speaker at a public hearing to provide his or her name and address, and that practice does not chill the speaker's First Amendment rights. Calling speakers up to the podium by name provides an orderly process to conduct a public meeting without undue confusion or repetition. This benefits both the elected officials and the members of the public. Moreover, at public hearings involving local government matters such as budgeting, taxation, zoning, law enforcement, and local regulations, both elected officials and members of the public have a legitimate interest in knowing whether a speaker is a resident who will be impacted by the government action at issue. Finally, most public meetings do not offer the opportunity for governmental misuse of enforcement priorities that concerned the trial court when it issued the injunction.

In sum, the temporary injunction blocking the City from requiring the names and addresses of all speakers at all public hearings improperly "infringe[s] upon

conduct that does not produce the harm sought to be avoided." <u>Angelino</u>, 2 So. 3d at 1104. We therefore vacate the injunction.

In reversing the temporary injunction for being overbroad, we do not foreclose the trial court on remand from entering a temporary injunction narrowly tailored to address specific and identified problems as authorized by law.

Reversed and remanded.

LINDSEY, J., concurs.

LAGOA, J., (concurring in part and dissenting in part).

I write separately because I respectfully dissent in part from the majority opinion.  The order before us temporarily enjoins the City of Miami (the "City") from: (1) enforcing any ban on vacation rentals within the City's T3 zone, i.e., the area zoned as suburban residential; (2) requiring members of the public to provide their names and addresses as a condition to speaking at City Commission meetings; and (3) requiring the City to advise residents that they may remain anonymous while speaking at City Commission meetings.  Regarding that portion of the order relating to vacation rentals, I disagree with the majority's holding that the trial court erred in concluding that Appellees established a substantial likelihood of success on the merits regarding residences that are predominantly used for permanent housing—the issue that was the subject of the extensive evidentiary hearing held by the trial court.  Although I agree with the majority that the order's injunctive remedy goes beyond what was established at the evidentiary hearing, I, unlike the majority, would not vacate the order, but would instead remand to the trial court with instructions to modify the order.  Regarding that portion of the order addressing the City's requirements regarding conditions for speaking at City Commission meetings, I agree with the majority that the order's

injunctive remedy is overbroad, but, rather than vacate the order, I would remand with instructions to modify the order.

The Injunction Against the City's Vacation Rental Ban

The question relating to the City's prohibition on vacation rentals depends upon the express language of the City's zoning ordinances. "Municipal ordinances are subject to the same rules of construction as are state statutes." Rinker Materials Corp. v. City of North Miami, 286 So. 2d 552, 553 (Fla. 1973). As with state statutes, courts "are prohibited from inserting words or phrases into municipal ordinances to express intentions that do not appear," Mandelstam v. City Comm'n of City of S. Miami, 539 So. 2d 1139, 1140 (Fla. 3d DCA 1983), and must give the ordinance "the plain and ordinary meaning of the words employed by the legislative body," here the City Commission, Rinker, 286 So. 2d at 554. Moreover, "[z]oning laws are in derogation of the common law and, as a general rule, are subject to strict construction in favor of the right of a property owner to the unrestricted use of his property." Mandelstam, 539 So. 2d at 1140 (citing City of Miami Beach v. 100 Lincoln Road, Inc., 214 So. 2d 39 (Fla. 3d DCA 1968)); see also Rinker, 286 So. 2d at 553 ("Since zoning regulations are in derogation of private rights of ownership, words used in a zoning ordinance should be given their broadest meaning when there is no definition or clear intent to the contrary and the ordinance should be interpreted in favor of the property owner.").[5]

The City's comprehensive zoning code, Miami 21, became effective in 2010. Miami 21 divides the City into various "transect zones" (i.e., zoning districts) and establishes permitted uses within each zone. At issue in this case is whether Miami 21 prohibited vacation rentals within the City's T3 zone prior to June 1, 2011. That date is significant because section 509.032(7)(b), Florida Statutes (2016), preempts any local law, ordinance, or regulation that prohibits vacation rentals unless the local law was adopted on or before June 1, 2011. Thus, if Miami 21 did not prohibit vacation rentals in the T3 zone prior to June 1, 2011, the City may not enact, amend, or otherwise interpret its zoning code to do so now.[6]

---

[5] The City suggests that Miami 21 expresses a clear intent that the language of the City's zoning ordinance be construed against the homeowner, relying on the statement in City of Hallandale v. Prospect Hall College, Inc., 414 So. 2d 239, 240 (Fla. 4th DCA 1982), that "[s]ince zoning regulations are in derogation of private property ownership rights, general zoning law provides that zoning ordinances are to be construed broadly in favor of the property owner *absent clear intent to the contrary*." (emphasis added). First, to the extent that the quoted language from City of Hallandale conflates the separate issues identified by the Florida Supreme Court in Rinker of (1) how broadly terms should be interpreted and (2) who should the ordinance be interpreted in favor of (municipality versus property owner), I would not follow that lead. Second, even if City of Hallandale articulates a correct legal standard, it is inapplicable here. Miami 21 states that "[w]here the requirements of this Miami 21 Code vary with the applicable requirements of any law, statute, rule, regulation, ordinance, or code, the most restrictive or that imposing the higher standard shall govern." That provision merely sets forth a rule of construction to resolve conflicts between Miami 21 and other applicable federal, state, or local laws. It has nothing to do with the internal interpretation of Miami 21's provisions, nor does it address how to interpret Miami 21 when the zoning ordinance itself is silent regarding an issue.

[6] On August 15, 2015, the City issued Zoning Interpretation 2015-001, which purported to "clarify the issue of short-term rentals" in the T3 zone. The 2015

15

Miami 21 defines the T3 zone as the City's "Sub-Urban" zone, and only permits certain "Residential" uses within it. Miami 21 defines "Residential" as the category "intended to encompass land use functions predominantly[7] of permanent housing." (emphasis added) Building uses defined by Miami 21 that are not permitted in the T3 zone include "Lodging."

Miami 21 further divides the T3 zone into three categories—"Restricted," which permits only Single-Family Residences (and Home Offices) and Community Residences; "Limited," which includes all of the uses in the T3 Restricted category and adds Ancillary Units ("granny flats") as permitted uses; and "Open," which includes all of the uses in the T3 Limited category and adds Two Family-Housing (duplexes) as permitted uses. Miami 21 defines a "Single-Family Residence" as a:

Zoning Interpretation concluded, in cursory fashion, that Miami 21 prohibited a resident from providing a temporary vacation rental in a Single Family Residence or Two Family-Housing in the T3 zone because such use constitutes "Lodging," which is a prohibited use in the T3 zone. If the 2015 Zoning Interpretation were a valid construction of Miami 21's language existing as of June 1, 2011, then the City's prohibition on vacation rentals would not be preempted by section 509.032(7)(b), Florida Statutes. Because Miami 21 did not prohibit vacation rentals prior to § 509.032(7)(b)'s effective date, however, the 2015 Zoning Interpretation does not save the City's prohibition on vacation rentals from preemption.

[7] "Predominate" means "1. To have or gain controlling power or influence; prevail. 2. To be of or have greater quantity or importance . . . . To dominate or prevail over." *Predominate*, The Am. Heritage Dictionary (Houghton Mifflin 3rd ed. 1992).

> Detached Building used as a <u>permanent</u> [8] residence by a single housekeeping unit. The term is general, applying to all detached house types. Also known as Principal Dwelling Unit.

(emphasis added). Other types of Residential uses defined in Miami 21, i.e., Multi-Family Housing; Live-Work; Work-Live, are not permitted in the T3 zone. Miami 21 measures the number of residences in all types of Residential uses in terms of "dwelling units," a term that is not defined in the zoning code.

On its face, Miami 21 does not address a resident's use of his or her permanent residence for temporary vacation rentals. Indeed, the express language of Miami 21 states that the Residential use category encompasses "land use functions predominantly of permanent housing," thereby contemplating that a Residential use building may include additional uses as long as those other uses do not diminish the fact that the predominant, i.e., outstanding or prevailing, use of the property is for permanent housing. Had the City intended to adopt a more restrictive standard for its zoning ordinance, it could have used the word "exclusively," rather than "predominantly," in its definition of Residential use. As noted above, however, we are not free to insert words into municipal ordinances that do not appear in them.

---

[8] "Permanent" means "1. Lasting or remaining without essential change. 2. Not expected to change in status, condition, or place." *Permanent*, <u>The Am. Heritage Dictionary</u> (Houghton Mifflin 3rd ed. 1999).

During the course of the five-and-a-half-hour evidentiary hearing, the trial court heard testimony from a number of witnesses, including a number of the individual Appellants. Their unrebutted testimony was that each of them live in a single-family residence that is his or her permanent residence and that is located in the City's T3 zone. Each testified that they occasionally use Airbnb, Inc.'s ("Airbnb") platform to rent out all or part of their permanent residence on a temporary, short-term basis. The Appellants' use of Airbnb's platform varies among them. For example, Kenneth Tobin testified that he rented his home for "less than 20" days each year during 2015 and 2016, and that "[t]wo nights is the average stay" for each rental. He further testified that he had "probably seven" different renters during that period of time. During those rentals, Mr. Tobin testified that he does not stay in his home, but either travels out of town or stays somewhere else in town (*e.g.*, his boat; his daughter's house). Gary Levin testified that he believed that during 2016 he and his wife, Appellant Toya Bowles, rented their home for 12 nights, with the average stay being "three nights, a long weekend." Yamile Bell testified that she rented a room in her house "probably" more than 30 times during 2016, with the length of stay varying. Ms. Bell testified that, unlike Mr. Tobin, she and her family live in their home during each of these rentals.

18

During its direct and cross-examination of the various witnesses at the evidentiary hearing, the City did not elicit any testimony that contradicted the Appellants' testimony regarding their use of their residences. For example, the City made no attempt to show that the predominant use of any of the Appellants' houses was for anything other than their personal, permanent residences. Instead, the City argued below, and before this Court, that the Appellants' occasional, short-term rental of all or some of the rooms in their permanent residences converted the building's use from "Residential" to "Lodging."

As noted above, Miami 21 prohibits "Lodging" uses in the T3 zone. Miami 21 defines the "Lodging" category as "intended to encompass land Use [sic] functions <u>predominantly</u> of sleeping accommodations occupied on a rental basis for limited periods of time." (emphasis added). Miami 21 measures the sleeping accommodations in terms of "lodging units," which are defined as "furnished room[s] of a minimum two hundred (200) square feet that includes sanitary facilities, and that may include limited kitchen facilities." A lodging unit is further defined as "not qualifying as a Dwelling Unit or efficiency apartment; occupied by transients on a rental or lease basis for limited periods of time." Miami 21 further defines the categories of permitted Lodgings, based on the number of lodging units grouped together in a building, i.e., a Bed & Breakfast (a group of up to ten

lodging units), an Inn (a group of up to twenty-five lodging units), and a Hotel (a group of more than twenty-five lodging units).

Miami 21 expressly defines the situation where a building in the City's Residential use category will be considered part of the Lodging use category. Specifically, "Multi-Family Housing" use falls within Miami 21's Residential use category. Miami 21 provides, however, that a "multifamily Structure where Dwelling Units are available for lease or rent for less than one month shall be considered Lodging." Significantly, this is the only place where Miami 21 mentions the recategorization of Residential use to Lodging use based on short-term rentals. As Multi-Family Housing is not a permitted use within the T3 zone, however, this provision has no applicability to the T3 zone. Indeed, Miami 21 is simply silent regarding a resident's occasional short-term rental of his or her permanent residence at any building type permitted in the T3 zone. Principles of statutory construction therefore compel the conclusion that, other than the Multi-Family Housing exception discussed above, Residential use buildings whose use functions are predominantly that of permanent housing are not lodging units under Miami 21. See, e.g., Hadley v. City of Miami, 215 So. 3d 1, 9 (Fla. 2017) ("[U]nder the principle of *expressio unius*, *est exclusio alterius*, meaning 'the mention of one thing implies the exclusion of another,' legislative direction as to how a thing shall be done is, in effect, a prohibition against it being done any other

way."); Rinker, 286 So. 2d at 555 (applying same rule of statutory construction to zoning ordinance). Based on the express language of Miami 21 and the principles of statutory construction that must be applied to the City's zoning code, the trial court correctly concluded that the Appellants had established a likelihood of success on the merits.

The trial court erred, however, in the breadth of its temporary injunction. The Appellants succeeded in establishing that Miami 21 does not prohibit vacation rentals in the T3 zone, as long as the building's use remains predominantly for permanent housing, i.e., the residence continues to conform to the restrictions generally applicable the "Residential" use category. The trial court's order, however, goes beyond that and establishes a blanket prohibition on the City's ability to enforce its existing zoning code against buildings located in the T3 zone that do not conform to those restrictions. For example, the owner of a single-family residence could seek to use the house solely for vacation rentals. In that case, the residence might violate the zoning regulations generally applicable to the T3 zone because its use would not be predominantly for permanent housing. Cf. Flava Works, Inc. v. City of Miami, 609 F.3d 1233 (11th Cir. 2010). Because nothing in section 509.032(7)(b) prohibits the City from enforcing its zoning regulations against nonconforming uses, the trial court's order goes beyond what was established at the evidentiary hearing. Rather than vacate that portion of the

order in its entirety, however, I would remand with instructions to the trial court to modify the temporary injunction consistent with this analysis.

The Injunction Against the City's Policies for Commission Hearings

The trial court's order also enjoins the City from "requiring members of the public, as a condition of their right to make public comment at City Commission meetings, from having to provide their names and addresses, and that agents of the City shall advise residents that, if they wish to remain anonymous, they will still be allowed to speak." The majority correctly points out the legitimate reasons that the City has for asking speakers to provide their name and address at public hearings, and also correctly points out that prohibiting the City from requiring the names and address of all speakers at all public hearings goes far beyond the harm that motivated the trial court's order in the first place.

The issue before us is not the general application of the City's policy of requiring names and addresses as a condition of speaking at a public hearing, but instead whether, as applied to the specific circumstances at issue in this case, application of the City's policy provided sufficient grounds to support the trial court's conclusion that injunctive relief was warranted. The undisputed facts giving rise to the trial court's order are therefore important.

On Thursday, March 23, 2015, the City Commission held a regularly scheduled meeting to consider adoption of a resolution prohibiting vacation rentals

in the T3 zone and directing the City Manager to enforce the City's regulations against such activity. The resolution ultimately passed by a 3 to 2 vote of the City Commission. Appellants Bell, Bowles and Tobin testified at the evidentiary hearing that they attended and spoke at the City Commission meeting, and that in order to speak at the meeting, each was required to give their name and address to the City Clerk. In addition, the parties stipulated to a number of facts for purposes of the evidentiary hearing, including:

> (1) the City requires speakers, as a condition of speaking at any City Commission meeting, to provide their names and addresses as part of the Commission's regular procedures;

> (2) at the March 23, 2017 Commission meeting, the City Manager stated: "We are now *on notice for people who did come here* and notify us in public *and challenge us in public*. I will be duly bound to request our personnel to enforce the city code." (emphasis added); and

> (3) at the March 23, 2017 Commission meeting, the Mayor stated: (a) "With that lawsuit, [Airbnb is] precipitating things because I think it's their fault that they brought these people to City Hall knowing … that they have to give their name and addresses."; (b) "The city attorney is planning on sending out cease-and-desist orders in the coming weeks specifically to the hosts who spoke up at the meeting."; and (c) "This is more than taking the temperature. This is about sending a message to the residents."[9]

Appellants sought a temporary injunction based on the chilling effect that these public statements, coupled with the City's requirement that speakers provide their names and addresses prior to speaking before the City Commission, had on

---

[9] Appellants Tobin, Levin, and Bell each testified that they understood the City officials' statements to be threats against them for speaking in opposition to the City's resolution prohibiting vacation rentals.

23

their rights under the First Amendment to the United States Constitution. The First Amendment secures to citizens the right, *inter alia*, to "petition the Government for a redress of grievances," and that right is applicable to state and local governments through the Fourteenth Amendment.[10] Actions taken in retaliation or retribution for statements made by citizens addressing a local governmental body, such as the City Commission, on matters of public concern can violate that constitutional right to petition. See, e.g., Jeffords v. Columbia Cty. Bd. of Cty. Comm'rs, No. 3:13-cv-286-J-32PDB, 2014 WL 6065711, at *3-4 (M.D. Fla. Nov. 12, 2014) (noting that adverse consequences visited upon a citizen who exercises her right to petition the government can give rise to a First Amendment violation, but concluding that no violation had occurred under the particular circumstances); see also Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005) ("A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights."); Moon v. Brown, 939 F. Supp. 2d 1329, 1349-51 (M.D. Ga. 2013) (finding that a mayor's direction to tow plaintiffs' pickup truck with political sign in its bed, at an expense of $90.00 incurred by plaintiffs to recover their truck, constituted retaliation in violation of plaintiffs' exercise of their First Amendment right to freedom of speech).

---

[10] McKinley v. Kaplan, 262 F.3d 1146, 1147 n.1 (11th Cir. 2001).

The majority appears to agree with the trial court that the City's actions infringed on Appellants' right to petition their government, but vacates the injunction as too broad. I agree with the majority that the scope of the injunction casts too wide a net, but rather than vacating the injunction, I would remand with instructions to the trial court to modify the temporary injunction to more narrowly tailor it to remedy the particular harm to be avoided under these particular circumstances.

For these reasons, I respectfully concur in part and dissent in part.