293 So.2d 366 (1974)
MEDICAL ARTS, INC., a Florida Corporation, Appellant,
v.
Loyal D. ROHRBAUGH et al., Appellees.
No. 73-121.
District Court of Appeal of Florida, Fourth District.
March 29, 1974.
Rehearing Denied May 15, 1974.
*367 Phillips & Babbitt, West Palm Beach, for appellant.
Ernest G. Simon, Delray Beach, and Frederick E. Hollingsworth, West Palm Beach, for appellees.
JOHNSON, CLARENCE T., Jr., Associate Judge.
Appellant, Medical Arts, Inc., appeals from an injunction prohibiting it from utilizing as a parking facility, a parcel of land adjacent to its medical complex. The action was brought by an adjacent property owner, hereafter called Rohrbaughs.
The land involved in the litigation consisted of Lots 10 and 11 and an unnumbered parcel immediately to the rear of those lots. Their relationship and zoning are as follows:

The injunction complained of was directed to Appellant's use of the unnumbered parcel zoned R-1AA.
In 1960, Appellant's president, Vernon Astler, M.D., sought to build a medical facility on Lot 10. Under the City's then existing zoning ordinances, such construction was permitted only if a conditional use was granted. Although a conditional use was requested, the City advised Dr. Astler that he was permitted to erect the facility without the necessity of a conditional use permit being formally issued. He then constructed the facility. Lot 10 has continued to carry a residential zoning classification (R-2).
In 1962 the Rohrbaughs purchased a home adjacent to the unnumbered parcel. Sometime thereafter, Appellant constructed an apothecary on Lot 11, whose R-3 zoning classification permitted that enterprise, as well as a medical clinic. Lot 11 has continued to carry an R-3 zoning classification.
In early 1971, Appellant applied to the City for, and was issued, a building permit to enlarge the medical facility on Lot 10, to build a two-story medical complex over and around the apothecary on Lot 11 and to use the unnumbered lot as a parking lot. The unnumbered parcel, zoned R-1AA (residences only) was permitted to be utilized as a parking lot based on the City's interpretation of Section 3.5(c) of the Zoning Code:
"(c) where a district boundary divides the area of a lot unequally, the district classification and regulation of the larger portion shall apply to the remaining smaller portions of the lot."
Appellant commenced construction in February 1971. In March 1971, the Rohrbaughs unsuccessfully complained to the City Council, but did nothing further until May 18, 1971, when they filed this action seeking, inter alia, to revoke the building permit and enjoin the intended use of the property. No temporary injunction was sought and the construction, including the parking facility, was completed and in use at the time of trial.
The trial court ruled in favor of Appellants as to Lots 10 and 11, but enjoined Appellant's use of the unnumbered parcel as a parking facility on the ground that a *368 conditional use permit was required for such use and had not been obtained.
Appellants strenuously argued in the trial Court and here, that the Rohrbaughs' failure to invoke and exhaust the administrative remedies prescribed by Section 31-15 of the City Charter, i.e., appeal to the Board of Adjustment followed, if unsuccessful, by Certiorari to the Circuit Court, precludes their maintenance of this direct action. The trial court, feeling that the Rohrbaughs were attacking Section 3.5(c), supra, as invalid per se, ruled that they had standing, relying on Renard v. Dade County, 261 So.2d 832 (Fla. 1972) and Wager v. Green Cove Springs, 261 So.2d 827 (Fla. 1972).
Legal import aside, the requirement that available administrative remedies be exhausted is grounded in practicality. In DeCarlo v. Town of West Miami, 49 So.2d 596 (Fla. 1950) the Florida Supreme Court put it this way:
"The administrative boards usually provided for the consideration and review of zoning problems are made up of local people, having the advantage of full local information as to the reasons behind the various zoning regulations. Their findings, while not conclusive, are indeed helpful in the ultimate determination of the rights of the parties. Moreover, the inequalities of a zoning ordinance, if called to the attention of such local administrative boards, may frequently be adjusted at that level. Such boards should, at least, be given an opportunity to afford relief, or state their reasons for not doing so."
In Hennessy v. City of Fort Lauderdale, Fla.App. 1958, 101 So.2d 176, the Court reviewed the law on the subject and quoted from Metzenbaum, Law of Zoning, 1955 Ed., Vol. 1, Chap. IX-3, "Exhaustion of Available Administrative Remedies Required Before Entering Court":
"The usual requirement that a complainant must exhaust his available Administrative Remedies, before the courts will entertain such complainant's action, is divided  at the very outset  into two, dissimilar situations, to wit:
"(a) When a court-proceeding alleges that the zoning ordinance or regulation is unconstitutional in its Entirety, and that the very existence of `the ordinance and maintenance thereof, in effect, constitutes a present invasion of the complainant's property rights and a threat to continue it', and  on the other hand:"
"(b) When the court action is aimed merely `against any specific provision or provisions' of a zoning ordinance, as they apply to complainant's particular property."
"In the former (a) instance  when a zoning ordinance is thus attacked in its entirety, it is not necessary to have employed the available administrative remedies, such as applying for a permit or going before the board of appeals, before entering court, or applying to the Legislative body."
"But, when a zoning ordinance, in the latter (b) situation is attacked as to unconstitutionality or unreasonableness of a `specific provision' (or provisions) as it affects complainant's particular property, such complainant is required to employ the available administrative remedies, before the courts will entertain such action"
"* * *"
With these rules in mind, we now look at the Amended Complaint, where Plaintiffs attacked the issuance of the building permit on the following grounds (with our comments in parenthesis following each ground):
1. That Lots 10, 11 and the unnumbered lot did not constitute a single lot within the meaning of the City Zoning Code. (This is clearly not an attack on an ordinance in its entirety  only on the interpretation by the City that the land constituted a single lot within the purview of Sec. 3.5(c).)
*369 2. That if the lots did constitute a single lot within the meaning of the Code, then the entire parcel is governed by R-2 zoning regulations and a conditional use permit was required and not procured. (This is not an attack on an ordinance in its entirety  only on its construction and application to the subject property.)
3. That the R-2 zoning regulations of the City contain no standards or guides as to issuance of conditional use permits, therefore, the regulations are void and a conditional use permit could not have even been granted on proper application being made. (This attack is based solely on an allegedly deficient conditional use provision of the ordinance  not on the ordinance in its entirety.)
4. That the R-3 zoning of Lot 11 is void as spot zoning, and a building permit could not be validly issued even as to that lot. (This is an attack on the action of the City in zoning Lot 11  not an attack on the entirety of an ordinance at all.)
In their prayer for relief, Plaintiffs asked the trial court to declare the rights of the parties, enjoin Medical Arts, Inc. from using "said premises" for a medical clinic, enjoin the City from issuing building permits in violation of R-1AA and R-2 zoning regulations of the City, mandatorily enjoin the City to revoke the building permit, and award damages.
At no time, did Plaintiffs allege, or attempt to prove, or ask the trial court to declare, that the ordinance in question was unconstitutional or otherwise invalid in its entirety. The conclusion is inescapable that Plaintiffs have failed to bring themselves within the rule recognized in Hennessy, supra, so as to permit them, over objection, to maintain this action without prior exhaustion of their administrative remedies. We hold that Plaintiffs do not have standing to maintain this action.
The above holding would normally require dismissal of the case without prejudice, since it means only that the case was prematurely filed. Therefore, we will proceed to the second point raised by Appellant, the determination of which may resolve the matter with finalty.
Appellant asserted via affirmative defense and contends here that even absent a question of standing, the doctrine of estoppel should apply to bar this action. We agree. As indicated, the entire project was being erected under the building permit issued in February 1971. Construction commenced immediately after issuance of the permit. Except for the Rohrbaughs' unsuccessful objection to the City Council in March 1971, they took no other action until this case was filed on May 18, 1971, after approximately $135,000.00 had been expended by Appellant on construction. Under the facts, appellant had the right to rely on the validity of the building permit and did so. The Rohrbaughs had no corresponding right to sit back until that reliance had been substantially manifested through extensive construction on the land, before acting. See City of Hollywood v. Hollywood Beach Hotel Co., Fla.App. 1973, 283 So.2d 867. The fact that the Rohrbaughs were adjacent property owners rather than the issuer of the permit does not preclude application of the estoppel doctrine. O.P. Corporation v. Lewis et al., Fla.App. 1972, 266 So.2d 676, rev'd in part 278 So.2d 593 (Fla. 1973).
Reversed with directions to enter Final Judgment for Defendants.
OWEN, C.J., and MAGER, J., concur.