332 So.2d 113 (1976)
SKAGGS-ALBERTSON's PROPERTIES, INC., Appellant,
v.
MICHELS BELLEAIR BLUFFS PHARMACY, INC., et al., Appellees.
No. 75-1050.
District Court of Appeal of Florida, Second District.
May 12, 1976.
Rehearing Denied June 10, 1976.
James A. Urban and James E. Slater, of Maguire, Voorhis & Wells, P.A., Orlando, Paul R. Pizzo, of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa; and Emerson Allsworth, Fort Lauderdale, for appellant.
Allen P. Allweiss, of Allweiss & Anderson, St. Petersburg, and Jack F. White, Jr., Clearwater, for appellee, Michels Belleair Bluffs Pharmacy, Inc.
Kenneth E. Easley, of Gormin, Geoghegan, Easley, Granese & Bauman, P.A., *114 Clearwater, and David F. Kern, Belleair Bluffs, for appellees, City of Belleair Bluffs, Florida, and C. Frank Snyder.
GRIMES, Judge.
This is an appeal from a judgment entered upon the complaint of a nearby property owner enjoining the construction of a large retail "drugstore" for being in violation of the zoning ordinance of the City of Belleair Bluffs.
Appellant (Skaggs) is the owner of property in Belleair Bluffs on which it proposes to construct a combination grocery, drug, sundry and hardware retail store. The property is located in a C-1 zoning district which permits "commercial development such as compact shopping areas located in the neighborhood which they serve." Skaggs applied for a building permit. After reviewing the plans, the city engineer determined that the proposed structure and use were permitted in a C-1 zoning district and caused a building permit to be issued.
Prior to the commencement of construction, the appellee (Michels) filed with the city a written objection to the issuance of the building permit. Five days later and without waiting for further action on the part of the city, Michels filed this suit for injunction. At the trial, most of the testimony was directed toward whether Skaggs' operation would be a neighborhood type store and whether the non-storage areas of the store had been properly calculated for the purpose of determining the required amount of off-street parking. The court concluded that the construction contemplated by Skaggs violated the zoning ordinance in these aspects and also in certain other particulars. The court further held that Michels had standing to complain of the violations and that it was unnecessary for Michels to exhaust its administrative remedies before filing suit.
Skaggs argues the following points on appeal:
(1) whether the court erred in holding that exhaustion of administrative remedies was not a prerequisite to the filing of the suit;
(2) whether the court erred in finding that Michels had standing to bring the subject action;
(3) whether the court erred in finding that Skaggs' proposed use of its property would be in violation of the zoning ordinance;
(4) whether the granting of the permanent injunction was unwarranted by the facts and constituted a premature intervention by the court into the administrative process.
The City of Belleair Bluffs filed a brief in support of Skaggs' position. We have concluded that the judgment must be reversed on the first two grounds, so it is not necessary for us to consider the remaining contentions.
In DeCarlo v. Town of West Miami, Fla. 1950, 49 So.2d 596, the Supreme Court responded in the negative to the question of whether a party could seek injunctive relief on the ground that a zoning ordinance was invalid with respect to his property without first having exhausted the administrative remedies available under the ordinance. In support of its conclusion, the court said:
"The administrative boards usually provided for the consideration and review of zoning problems are made up of local people, having the advantage of full local information as to the reasons behind the various zoning regulations. Their findings, while not conclusive, are indeed helpful in the ultimate determination of the rights of the parties. Moreover, the inequalities of a zoning ordinance, if called to the attention of such local administrative boards, may frequently be adjusted at that level. Such boards should, at least, be given an opportunity *115 to afford relief, or state their reasons for not doing so."
Our court's decision in Hennessy v. City of Fort Lauderdale, Fla.App.2d, 1958, 101 So.2d 176, is more directly on point because the complaint being made against the city's interpretation of its zoning ordinance was made by parties who did not own the property in question. There the plaintiffs had successfully obtained an injunction against the construction of a mortuary as being in violation of the zoning ordinance. On appeal, this court reversed for the failure of the trial court to permit the owners to raise the defense that the plaintiffs had failed to exhaust their administrative remedies. The court held that where a challenge was being made to the action of the city's building inspector in his interpretation of the zoning ordinance as contrasted to a general attack on the validity of the ordinance, it was necessary for the plaintiffs to exhaust such administrative remedies as were available to them before going to court.
Admittedly, our sister court in Continental Con-Dev Company v. Shallberg, Fla. App.4th, 1972, 267 So.2d 40, held that the exhaustion of administrative remedies was not a prerequisite to a suit brought to enjoin the construction of a building in violation of the city's zoning code. However, just two years later in Medical Arts, Inc. v. Rohrbaugh, Fla.App.4th, 1974, 293 So.2d 366, the same court reached the opposite conclusion without citing the Continental Con-Dev case. In Medical Arts the court held that it was essential for a property owner to exhaust his administrative remedies before seeking an injunction prohibiting the use of adjacent property as a parking lot in violation of the zoning code.
The zoning ordinance of the City of Belleair Bluffs provided for the Board of Adjustments to hear appeals from administrative opinions and decisions. Even if the objection filed by Michels with the city were construed to be an application for appeal, Michels did not wait for the Board of Adjustment to act. Michels' assertion that the Board of Adjustment would have rubberstamped the actions of the city engineer does not obviate the necessity of giving the Board of Adjustment an opportunity to carefully consider any objections which are made to the administrative decisions of the city employees with respect to zoning.
A reversal on the ground that Michels failed to exhaust its administrative remedies would require only that the suit be dismissed without prejudice because it was prematurely filed. We, therefore, proceed to the question of standing since our disposition of that issue also serves to dispose of the case with finality.
The leading case on the question of the standing required to seek an injunction against the violation of a municipal zoning ordinance is Boucher v. Novotny, Fla. 1958, 102 So.2d 132. The plaintiff in that case owned property across the street from the property on which Novotny was building a motel which was allegedly in violation of the setback requirements of Clearwater's zoning ordinance. The Supreme Court affirmed the dismissal of the complaint on the grounds of lack of standing. The court said:
"We, therefore, align ourselves with the authorities which hold that one seeking redress, either preventive or corrective, against an alleged violation of a municipal zoning ordinance must allege and prove special damages peculiar to himself differing in kind as distinguished from damages differing in degree suffered by the community as a whole."
The other significant Supreme Court case on this subject is Renard v. Dade County, Fla. 1972, 261 So.2d 832. The bulk of the opinion in that case was directed toward the proposition that where a person attacks a zoning ordinance which is void because not properly enacted or attacks a validly enacted zoning ordinance as being an unreasonable exercise of legislative power, he need not meet the "special damage" requirement of Boucher so long as he *116 has a legally recognizable interest which is adversely affected by the ordinance. The court reaffirmed the Boucher rule requiring one who seeks to enjoin an alleged violation of a valid municipal zoning ordinance to first prove special damages peculiar to himself which differ in kind rather than in degree from those suffered by the community as a whole. At the same time, the court said:
"... However, in the twenty years since the Boucher decision, changed conditions, including increased population growth and density, require a more lenient application of that rule. The facts of the Boucher case, if presented today, would probably be sufficient to show special damage."
Notwithstanding the foregoing observation, the District Court of Appeal in Continental Con-Dev Company v. Shallberg, supra, thereafter dismissed a suit for lack of standing on facts almost identical to Boucher. Subsequently, that court upheld the right of a property owner to sue to enjoin Florida Power and Light Company from installing high voltage power lines adjacent to his property in violation of city zoning ordinances. The court noted that the plaintiff had suffered damages differing in kind from the community generally because his property adjoined the land upon which the alleged zoning violation existed, whereas, in Boucher and Continental Con-Dev the property of the respective plaintiffs was sufficiently removed from the area in which the violations were occurring. Carroll v. City of West Palm Beach, Fla.App.4th, 1973, 276 So.2d 491. More recently, the Third District Court of Appeal held that adjacent landowners across a waterway from an island had standing to maintain an action to enjoin claimed zoning violations arising out of the construction of two-story parking garages which would have the net effect of raising the vertical clearance on the entire island thereby obstructing the plaintiffs' view and possibly causing delay in the recession of storm waters which could aggravate the risk of flooding the plaintiffs' home. State ex rel. Gardner v. Sailboat Key, Inc., Fla.App.2d, 1974, 306 So.2d 616.
Our problem is to determine where the facts of the instant case fall. The Skaggs' store is to be constructed on the southeast corner of the intersection of West Bay Drive and Indian Rocks Road. Both of these streets are heavily traveled two-lane roads. The intersection is controlled by electric traffic signals. There is commercial property on all four corners of the intersection. Michels Pharmacy is in a small shopping center located on the northwest corner of the intersection but several other stores in this shopping center are closer to the Skaggs' property. The distance from the northwest corner of the Skaggs' property to the southeast corner of the area where Michels' customers park is approximately 425 feet. It is almost twice that distance from the front door of Michels Pharmacy to the front door of the proposed Skaggs' building.
One of Michels' main complaints is that the operation of the Skaggs' store will cause a substantial increase in traffic. Michels also expressed concern that if the Skaggs' parking lot were full, some of Skaggs' customers might park in the Michels' parking lot. However, Michels admitted that there were other parking areas between his store and the Skaggs' property. He acknowledged that the other stores in the area would also be affected by the increased traffic and the possible overflow parking.
In the final analysis, Michels' claim of special damages does not appear to be as strong as those of the plaintiffs in Novotny and Continental Con-Dev. The fact that Michels might lose business because of competition from Skaggs' drugstore operation cannot provide the requisite standing. Cord Meyer Development Co. v. Bell Bay Drugs, Inc., 1967, 20 N.Y.2d 211, 282 N.Y.S.2d 259, 229 N.E.2d 44. Neither would the fact that increased traffic could be expected *117 as a result of the Skaggs' store. Joseph v. Township of Grand Blanc, 1967, 5 Mich. App. 566, 147 N.W.2d 458; cf. Florida Palm-Aire Corporation v. Delvin, Fla. App.4th, 1969, 230 So.2d 26. As stated in Victoria Corp. v. Atlanta Merchandise Mart, Inc., 1960, 101 Ga. App. 163, 112 S.E.2d 793:
"The mere increase in traffic congestion adjacent to one's property as the result of improvements erected on nearby property and the attendant inconvenience resulting therefrom which are damages suffered alike by all property owners similarly situated, does not give to one individual such a substantial interest in the decision of the Board of Adjustment permitting the improvement as to authorize an appeal therefrom. Such increase in traffic congestion and attendant difficulties in finding parking places are matters which address themselves to the police authorities of the municipality rather than to the zoning authorities.
......
"... Such an inconvenience is a condition incident to urban living. It is merely the result of normal, urban growth and development. To hold that such an inconvenience would give to any resident or property holder of an urban area the right to override the decisions of boards of zoning appeals any time such property owner or resident disagreed with such decision would be a dangerous precedent to establish. It would result in materially slowing, if not completely stopping, the inevitable and necessary growth of large modern cities... ."
We, therefore, hold that any damages suffered by Michels as a result of the zoning violations which would ensue from the construction and operation of the Skaggs' store are only damages differing in degree from those suffered by the community as a whole and are not special damages which differ in kind. Accordingly, Michels lacks the standing necessary to maintain this suit.
REVERSED.
BOARDMAN, Acting C.J., and SCHEB, J., concur.