891 So.2d 583 (2004)
VANDERBILT SHORES CONDOMINIUM ASSOCIATION, INC.; Vanderbilt Club Condominium Association, Inc.; Vanderbilt Landings Condominium Association, Inc.; Vanderbilt Gulfside Condominium Association, Inc.; Monte Carlo Condominium Association, Inc.; The Mansions Condominium Association, Inc.; Gulf Cove Condominium Association, Inc.; and Vanderbilt Beach and Bay Association, Inc., Appellants,
v.
COLLIER COUNTY, Florida; Aquaport, LLC; and Conotel, LLC, Appellees.
No. 2D03-1594.
District Court of Appeal of Florida, Second District.
December 10, 2004.
David W. Rynders, Naples, for Appellants.
Theodore L. Tripp, Jr., and Elisa S. Worthington, Garvin & Tripp, P.A., Fort Myers, for Appellee Collier County.
Clay C. Brooker, Cheffy Passidomo Wilson & Johnson LLP, Naples, for Appellees Aquaport and Conotel.
*584 NORTHCUTT, Judge.
Vanderbilt Shores Condominium Association, Inc., and seven other neighboring associations filed an action for declaratory relief and mandamus to challenge a building permit issued by Collier County to Aquaport LLC and Conotel LLC ("the owners"). The associations appeal an order dismissing their suit. We affirm because the associations failed to exhaust their administrative remedies.
The following facts appear undisputed from our limited record. On November 15, 2001, the County approved the owners' site development plan for a fifteen-unit condominium, and on November 28, the County issued a building permit. In its elevation the building is shaped like an inverted "T" with the lower tier approximately thirty feet high and a middle column approximately ninety-five feet high. The project has side yard setbacks extending approximately thirty feet from the exterior walls of the lower tier.
The complaining associations contended that the side yard setbacks were insufficient under the Collier County Land Development Code and asked the circuit court to reach this conclusion by interpreting the applicable code provisions. The County offered a contrary interpretation and contended that the project met the standard. The circuit court rejected the suit, deferring to the County's longstanding interpretation of its Land Development Code and holding that the interpretation was not unreasonable or clearly erroneous. The court also noted that there were administrative procedures available that had not been pursued. We do not endorse the former conclusion, but we agree with the latter and affirm on that ground.
On the first point, the associations' interpretation of the Land Development Code appears to be correct. The following sections of the code are relevant to the determination of this issue. Article 6, division 6.3, provides the following definitions:

Building, height of: The vertical distance from the first finished floor to the highest point of the roof surface of a flat or Bermuda roof, to the deck line of a mansard roof and to the mean height level between eaves and ridge of gable, hip, and gambrel roofs....

Height of a building: See Building, height of.

Open space: Unoccupied space which is not used for buildings or structures and which is open to the sky. On improved lots, open space is the area between and around structures, including recreation areas.

Yard: The required open space, unoccupied and unobstructed by any structure or portion of a structure from 30 inches above the general ground level of the graded lot upward, provided, however, that fences and walls may be permitted in any yard subject to height limitations indicated herein.

Yard, side: The required open space extending along each side lot line between the rear lines of the required front yard and the rear lot line, or in the absence of any clearly defined rear lot line, to the point on the lot farthest from the rear line of the front yard....
Article 2 is the zoning code. In section 2.2.8.4.3 the minimum side yard requirements *585 in the residential tourist district, at issue here, are established as "[o]ne-half the building height as measured from each exterior wall with a minimum of 15 feet."
In article 2, division 2.6 contains supplemental district regulations, including the following:
Sec. 2.6.4. Exceptions to required yards.
In all zoning districts, yards, as defined in division 6, shall be as established by the dimensional standards for that zoning district (see division 2.2) except as follows:
2.6.4.1. Yard encroachments. Every part of every required yard shall be open and unobstructed from 30 inches above the general ground level of the graded lot upward to the sky except as hereinafter provided or as otherwise permitted in this Code[.]
The County's position on side yards for this project is: "With side yard set backs of 30 feet for the first tier, and 47 ½ feet for the top tier, the site plan provided set backs for each tier which complied with the LDC's minimum of one-half of the building height `as measured from each exterior wall.'" (Answer Br. at 2) The County's use of the phrase "as measured from each exterior wall" to refer to the measurement of building height, rather than the measurement of the side yard, is contrary to the definition of building height set forth in the code. Further, by its argument the County concedes that the top tier requires a side yard but asserts that it is sufficiently provided where the top tier is set back an additional 17 ½ feet. But this additional set back does not constitute a side yard, as that term is defined in the code, because it is occupied by the first tier. The definition of yard in division 6.3 requires "open space, unoccupied and unobstructed by any structure or portion of a structure." The provision regarding yard encroachments in section 2.6.4.1 reinforces this concept by requiring "[e]very part of every required yard [to] be open and unobstructed from 30 inches above the general ground level of the graded lot upward to the sky." Thus, the County's longstanding interpretation of how to measure side yards for tiered or wedding cake buildings is contrary to the code provisions regarding side yards.
To be sure, great weight must be given to the administrative construction of a statute by the officials charged with its administration. Pan Am. World Airways, Inc. v. Fla. Pub. Serv. Comm'n, 427 So.2d 716, 719 (Fla.1983). But "[w]hen an agency's construction amounts to an unreasonable interpretation, or is clearly erroneous, it cannot stand." Legal Envtl. Assistance Found., Inc. v. Bd. of County Comm'rs, 642 So.2d 1081, 1084 (Fla.1994). From a thorough reading of the code, the County's interpretation here appears to be clearly erroneous.
We need not decide this issue, however, because the circuit court otherwise correctly dismissed the associations' action. A party must exhaust its administrative remedies before challenging the issuance of a building permit. Skaggs-Albertson's Props., Inc. v. Michels Belleair Bluffs Pharmacy, Inc., 332 So.2d 113 (Fla. 2d DCA 1976). The supreme court has explained the reason:
The administrative boards usually provided for the consideration and review of zoning problems are made up of local people, having the advantage of full local information as to the reasons behind the various zoning regulations. Their findings, while not conclusive, are indeed helpful in the ultimate determination of the rights of the parties. Moreover, the inequalities of a zoning ordinance, if called to the attention of such local administrative *586 boards, may frequently be adjusted at that level. Such boards should, at least, be given the opportunity to afford relief, or state their reasons for not doing so.
332 So.2d at 114-15 (quoting DeCarlo v. Town of W. Miami, 49 So.2d 596, 596-97 (Fla.1950)).
As the circuit court recognized in its transcribed remarks attached to the final order, the code provides administrative procedures applicable to this controversy. In article 1, division 1.6 provides a procedure for obtaining an official interpretation of the code from the planning services director and then appealing that interpretation to the board of zoning appeals. The associations failed to avail themselves of this remedy. In a previous challenge to a development proposed for this same property, the Board of County Commissioners indicated that it agreed with the associations' interpretation of the side yard set back. This previous success demonstrates that pursuit of administrative remedies would not have been futile.
Normally, the failure to exhaust administrative remedies would mean only that the case was prematurely filed. But because the entire project has been completed here, without the associations seeking a temporary injunction, we conclude that their action is barred. See Med. Arts, Inc. v. Rohrbaugh, 293 So.2d 366 (Fla. 4th DCA 1974).
Accordingly, we affirm.
FULMER and CASANUEVA, JJ., Concur.