LaROSE, Judge.
This case comes to us for second-tier certiorari review. The Town of Longboat Key and others challenge the circuit court’s order quashing Town Ordinance 2009-25, which approved a $400 million redevelopment plan for the Longboat Key Club. After careful consideration, we deny the certiorari petition.

Relevant Background

Key Club Associates, Limited Partnership, Islandside Development, LLC, and the owners of the Longboat Key Club (collectively, Key Club) applied for a development order to expand the Longboat Key *1039 Club. The Town’s Planning and Zoning Board considered the application in public hearings. The Board transmitted the application to the Town Commission accompanied with the Board’s recommendation for approval, subject to certain conditions.
The Town Commission conducted its own hearings and determined that the application violated the Town’s Zoning Code (Code). Key Club asked the Town Commission to extend the hearings while Key Club pursued a Code amendment. The Town adopted Town Ordinance 2010-16, approving Key Club’s proposed amendment. Key Club amended its original application, and the Town Commission resumed the approval process.
Because it is relevant to the arguments on appeal, we note that during the continued process, Monica Simpson, the planning, zoning, and building director, reported to the Town Commission that she could not recommend approval. Ms. Simpson’s staff modified the proposed development plan based on their objections and the concerns of the public. Key Club' proposed another series of changes to the plan. Again, Ms. Simpson expressed reservations. Following a final set of hearings, the Town Commission approved the development order.
Islandside Property Owners Coalition, LLC, the Sanctuary at Longboat Key Club Community Association Inc., and L’Ambiance at Longboat Key Club Condominium Association, Inc. (collectively, IPOC), petitioned the circuit court for a writ of certio-rari to quash the development order, citing seven conflicts with the Code. The circuit court granted the writ. The Town and Key Club (collectively, the Town) petition for second-tier certiorari review of that decision. See Fla. R.App. P. 9.080(b)(2)(B). The Town contends that the circuit court departed from the essential requirements of the law in two respects: (1) the circuit court exceeded its certiorari jurisdiction by reweighing the evidence, and (2) the circuit court erred in not deferring to the Town’s interpretation of the Code under Rinker Materials Carp, v. City of North Miami, 286 So.2d 552 (Fla.1973).
We limit our review to considering: (1) whether the circuit court afforded procedural due process and (2) whether the circuit court departed from the essential requirements of the law. See Custer Med. Ctr. v. United Auto. Ins. Co., 62 So.3d 1086, 1092 (Fla.2010). Because the parties do not contend that the circuit court denied them due process, we assess only whether the circuit court departed from the essential requirements of the law.
A departure from the essential requirements of the law requires more than a simple legal error or an erroneous conclusion based on misapplication of the correct law. Id. We may only overturn the circuit court “when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.” Id. (quoting Combs v. State, 436 So.2d 93, 96 (Fla.1983)). The Town has not met this exacting standard.

The Circuit Court Did Not Reweigh Evidence

The Town first argues that the circuit court improperly reweighed the evidence before the Town Commission. On first-tier certiorari review, the circuit court was limited to determining whether: (1) the Town afforded procedural due process, (2) the Town observed the essential requirements of the law, and (3) competent, substantial evidence supported the Town’s decision. See City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla.1982). A court departs from the essential require *1040 ments of the law if it reweighs the record evidence. See id.
The Town posits that the circuit court deferred too much to Ms. Simpson’s position against approval. The circuit court referred to Ms. Simpson twice in the “Background” section of its order. “On May 28, 2010, Monica Simpson ... issued a staff report indicating she could not recommend approval.... ” Later, the court notes that “[o]n June 28, 2010, Director Simpson issued a revised staff report on Key Club’s ... revised application and proposed conditions. The ... Staff Report and Ms. Simpson’s testimony indicated that Key Club’s application and requested departures did not comply with the Zoning Code.” The Town contends that these references reflect the circuit court’s efforts to find evidence to quash the development order rather than assessing the record as a whole to determine whether competent, substantial evidence supported the Town’s decision.
The Town protests that the circuit court “relied on,” “gave weight to,” and “simply seize[d] on” Ms. Simpson’s statements to support its final order. The Town, citing Broward County v. G.B.V. International, Ltd., 787 So.2d 838, 846 n. 25 (Fla.2001), argues that the presence of this information and the absence of any testimony favoring approval show that the circuit court reweighed the evidence. This is not firm ground. In G.B.V. International, “according to the plain language of its order” it was apparent that the circuit court “combed the record and extracted its own factual finding.” Id. at 845.
Reweighing of the evidence is simply not apparent from “the plain language of [the] order” before us. To the contrary, we can see that the circuit court assiduously applied the appropriate factors in its first-tier certiorari review. “This court need not defer to a construction of the Zoning Code by the Town or Ms. Simpson if the language of the Code is clear and unambiguous.” Additionally, the circuit court’s analysis focused with precision on the specific words in the Code and their definitions, only mentioning Ms. Simpson’s testimony to summarize the arguments before making its own decision utilizing statutory interpretation. The circuit court did not claim that the Town lacked competent, substantial evidence to approve the application nor did the circuit court scour the record for evidence to rebut the Town’s decision. See Clay Cnty. v. Kendale Land Dev., Inc., 969 So.2d 1177, 1181 (Fla. 1st DCA 2007) (determining that when a circuit court examines whether the agency’s findings are supported by competent, substantial evidence, the court cannot conduct an independent review searching for evidence to rebut the agency’s decision).
The Town urges us to conclude that “this recitation [of Ms. Simpson’s position] establishes that the circuit court made its own review of the record evidence, selected certain evidence as relevant background, and then returned to that evidence in the body of its order.” We must reject a position that would thwart the rendering of reasoned judicial decisions. The Town’s argument reaches too far and would encourage a judge to omit any meaningful background information in an order lest he or she be accused of impropriety. This hardly promotes judicial transparency, sound explanation, and rational analysis. Our careful review of the record uncovers nothing suggesting that the circuit court relied on Ms. Simpson’s testimony to reach its decision.

The Circuit Court Was Not Required to Defer to the Town’s Interpretation of the Code

The Town next argues that the circuit court departed from the essential requirements of the law by not “acknow- *1041 ledg[ing] or applying] controlling principles of Florida law from Rinker Materials Corp.” According to the Town, the circuit court should have applied the Town’s interpretation of the Code because zoning regulations should be both consistently applied and construed to favor property owners.[1]
In Rinker Materials Corp., a property owner applied for a permit to construct a concrete batching plant. Id., 286 So.2d at 554. The city council denied the permit. The circuit court and district court denied certiorari relief. Id. at 553. The supreme court remanded for the grant of relief after determining that the district court erroneously interpreted the applicable zoning ordinances. Id. “In failing to apply the plain and ordinary meaning and common usage of the language of the ordinance in determining intent, the district court misapplied the established decisional rules of statutory construction.” Id. The supreme court concluded that local ordinances are subject to the same rules of interpretation as are state statutes; a court interpreting local ordinances must first look to the plain and ordinary meaning of the words in the ordinance. Id. at 553-54. If the plain and ordinary meaning is clear, then “other rules of construction and interpretation are unnecessary and unwarranted.” Id. at 554. In the end, the supreme court determined that the city council’s interpretation of its own ordinances was improper because it violated the clear and ordinary meaning of the ordinance. Id. at 555-56.
Rinker Materials Corp. bolsters the circuit court’s decision. The circuit court limited its analysis to the wording of the Code; it eschewed extraneous evidence of intent. See id. at 554 (“The intent of the North Miami City Commission in its enactment of the zoning ordinance in issue is to be determined primarily from the language of the ordinance itself and not from conjecture [ajliunde.”). When a term in the Code lacked definition, the circuit court utilized the proper rules of statutory construction, turning to the dictionary meaning to find the plain and ordinary meaning of undefined terms. See Baker Cnty. Med. Servs., Inc. v. Aetna Health Mgmt., LLC, 31 So.3d 842, 845 (Fla. 1st DCA) (“[Wjhen a statute does not define a term, we rely on the dictionary to determine the definition.”), review denied, 44 So.3d 1177 (Fla.2010).
For example, IPOC claimed that the development order approved commercial uses that the Code did not allow. The circuit court determined, in relevant part, that:
The clear and unambiguous language of § 158.002(D) of the Zoning Code requires that any uses permitted in the [Gulf Planned Development] be “designated,” that is, to be indicated, set apart, marked out or made known. Black’s Law Dictionary, 6th Ed. Nowhere in the Zoning Code are commercial offices, meeting rooms, spas or commercial recreational uses such as the golf clubhouse set out, indicated or otherwise identified or made known to be permitted in the [Gulf Planned Development], The Court finds that the Development Order violates [the] Zoning Code by permitting such uses on the North Parcel and therefore departs from the essential requirements of the law.
*1042 Using the Code wording, aided by dictionary definition, the circuit court discerned the meaning of the Code. No rule required adherence to the Town’s self-serving interpretation. See Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (“[Wjhen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.” (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931))).
The Town argues that the Code is ambiguous, thus requiring the circuit court to defer to the Town’s reasonable interpretation. See Fla. Hosp. v. Agency for Health Care Admin., 823 So.2d 844, 848 (Fla. 1st DCA 2002) (holding that an agency’s interpretation is afforded deference by the court unless the plain language of the ordinance runs contrary to the agency’s interpretation). In support of this argument, the Town cites its longstanding tradition allowing similar nonresidential developments. Vanderbilt Shores Condominium Association v. Collier County, 891 So.2d 583, 584 (Fla. 2d DCA 2004), blunts that attack. Tradition cannot displace the plain meaning of a local code.
In Vanderbilt Shores Condominium Association, several condominium associations challenged a county building permit approving a development plan for a fifteen-unit condominium. Id. They complained that the design violated the zoning code. Id. The circuit court claimed that it must apply the county’s interpretation as long as the interpretation was not unreasonable or clearly erroneous and cited the county’s “longstanding interpretation of its Land Development Code.” Id. Despite the county’s tradition and interpretation, we determined that “the associations’ interpretation of the Land Development Code appears to be correct” and “the County’s interpretation here appears to be clearly erroneous.” Id. at 584, 585. Although we affirmed the lower court’s order on different grounds, we noted that while “great weight must be given to the administrative construction of a statute by the officials charged with its administration,” a court cannot afford such deference when the interpretation is unreasonable or erroneous. Id. at 585.
The Town’s longstanding interpretation of its Code cannot tie the circuit court’s hands. To allow such a result would countenance a shifting-sands approach to Code construction that would deny meaningful judicial review of local quasi-judicial decisions. The meaning of a code would remain in flux. Such an approach does not promote consistency in the application of law. As the wording of its laws binds a legislature, the Town is bound by the wording of its Code. This mounts a bulwark against the Town’s unfettered exercise of power. See Bd. of Cnty. Comm’rs of Brevard Cnty. v. Snyder, 627 So.2d 469, 474 (Fla.1993) (noting that local governments and agencies must strictly adhere to town development plans and zoning codes); City of Miami v. Rosen, 151 Fla. 677, 10 So.2d 307, 309 (1942) (discussing the limited scope of authority under which municipal ordinances are valid); Ocean’s Edge Dev. Corp. v. Town of Juno Beach, 430 So.2d 472, 474-75 (Fla. 4th DCA 1983) (determining that courts cannot amend local ordinances “as the town would have liked it to read” by ignoring the language of the code “in favor of after-the-fact expert testimony as to legislative intent to fill in the cracks” because property owners and residents have every right to depend on the wording of the code.) As the circuit court noted, the Town is free to amend the Code. See Carroll v. City of Miami Beach, 198 So.2d 643, 645 (Fla. 3d DCA 1967) (“[T]he City is *1043 bound by the express terms of its own ordinance.... If the City desires a different meaning for its ordinance in the future, it may amend, modify, or change the same by legislative process.”).
In only one instance did the circuit court agree that a Code provision was ambiguous. Section 158.128(D) described the minimum number of off-street parking spaces required for a development, accompanied by a table in the section describing the minimum parking spaces for different uses. The table includes the term “additional uses” with no definition. The Town argued that the northern parcel of land required fewer spaces because, combined, the north and south parcel of the development had enough spaces and that “additional uses” permitted the Town to approve a single site plan with enough spaces regardless if the plan included separate parcels. The circuit court determined that this interpretation was unreasonable because “[t]he Town’s interpretation of the ‘additional use’ provision creates clear conflicts with the other provisions of the same section of the Zoning Code that require safe and adequate parking.” The circuit court properly applied the law in this instance by first determining whether the statute was ambiguous and then determining if the Town’s interpretation was unreasonable. See Office of Fire Code Official of Collier Cnty. Fire Control & Rescue Dists. v. Fla. Dep’t of Fin. Sens., 869 So.2d 1283, 1237 (Fla. 2d DCA 2004) (holding that while an agency’s reasonable interpretation of an ordinance binds a court, a court cannot “defer to an implausible and unreasonable statutory interpretation adopted by an administrative agency”). The circuit court was bound by the interpretation only if it determined the Town’s interpretation reasonable.
Because of the limited scope of our second-tier certiorari review, we see no need to analyze further each of the seven individual areas that IPOC challenges as conflicting with the Code. See Custer Med. Ctr., 62 So.3d at 1092; State, Dep’t of Highway Safety & Motor Vehicles v. Edenfield, 58 So.3d 904, 906 (Fla. 1st DCA 2011) (“[A] misapplication or an erroneous interpretation of the correct law does not rise to the level of a violation of a clearly established principle of law.”). The circuit court properly applied the concepts of statutory construction as required by Rinker Materials Corp.

Conclusion

The trial court did not depart from the essential requirements of the law in quashing the development order. There is no indication that the circuit court reweighed the evidence, and the circuit court properly construed the Code in accordance with Rinker Materials Corp. Therefore, we deny the petition.
Petition denied.
KHOUZAM and BLACK, JJ„ Concur.

. The quotation from Rinker Materials Corp. that the Town summarizes reads, "Since zoning regulations are in derogation of private rights of ownership, words used in a zoning ordinance should be given their broadest meaning when there is no definition or clear intent to the contrary and the ordinance should be interpreted in favor of the property owner.” 286 So.2d at 553 (emphasis added).