MAKAR, J.
Blair Nurseries owns rural acreage in Baker County, Florida, which it subdivided in 2002 into twenty-two five-acre residential lots known as Smoke Rise II, a planned community for horse owners. In 2003, Celeste Reynolds purchased a lot and built a home, but no other lots have been sold, leaving her property adjoining native undeveloped lands for over a decade in the defunct equestrian community.
In 2014, Blair Nurseries filed an application with Baker County to vacate the subdivision plat (excepting Reynolds’s lot) so its property could be returned to acreage for agricultural purposes. The Baker County planning staff and the County’s Development Review Committee recommended approval of the application and the County’s Director of Zoning and Planning stated that the application satisfied all requirements.
The applicable statute required Blair Nurseries to show three things: (1) that it owned the property “covered by the plat sought to be vacated;” (2) that “the vacation [of the plat] by the governing body of the county will not affect the omiership ... of other persons owning other parts of the subdivision,” and (3) that vacation “will not affect the ... right of convenient access” of such persons. § 177.101(3), Fla. *536 Stat. (2014) (emphasis added). No dispute exists that Blair Nurseries owns the platted property and that access to Reynolds’s home would be unaffected by vacation of the plat because her home directly abuts and accesses Mud Lake Road, which forms the southern border of much of the platted property. Instead, the only question — one that arose later in the process — was whether vacating the plat would affect Reynolds’s “ownership” of her property within the meaning of the emphasized statutory language above.
The Baker County Board of County Commissioners held a public hearing on the matter at which Reynolds spoke. She opposed reversion, believing it would reduce the value of her home. A discussion arose about whether a potential reduction in value of her home was a sufficient legal justification to deny the application. Legal counsel for Blair Nurseries pointed out that Reynolds’s ownership of her property would be unaffected, but some commissioners posited that the potential for reduced value was akin to “a£fect[ing] the ownership” of the property. In the end, the Commission unanimously denied Blair Nurseries’ application.
Blair Nurseries sought certiorari and mandamus relief in the circuit court, arguing that the County failed to observe the essential requirements of law in denying the application; because its application met all criteria in the statute and county code, no basis existed to deny it. In addition, the County’s consideration of the “value” of Reynolds’s property as a basis for denial was legal error because the statute only permits consideration of whether vacation of a plat will “affect the ownership” of others who own property in the subdivision. The trial court issued a written order denying relief, but did not reach the value/ownership issue. Instead, it concluded that it lacked the judicial power to do so because the County’s decision was a discretionary one:
[Bjecause both the applicable statute [section 177.101(3)] and county code provision [section 8.06.01[1]] use the permissive ‘may’ and do not include any words requiring a board to reach a particular decision if certain criteria are met, Petitioner has not demonstrated entitlement to mandamus or certiorari relief, and the court need not reach the testimonial or valuation issues.
Because it viewed the Board as having essentially unreviewable discretion to grant or deny an application, it thereby foreclosed any judicial relief whatsoever.
On second-tier certiorari review, in this Court, Blair Nurseries is correct that the trial court violated a clearly established principle of law that resulted in a miscarriage of justice by concluding that the word “may” in section 177.101(3), precludes any judicial review of the Board’s decision. Nader v. Fla. Dep’t of High. Saf. & Motor Veh., 87 So.3d 712, 727 (Fla.2012). The statute plainly does not grant unre-viewable discretion; and clearly established law limits the discretion to deny a facially valid plat application.
To begin, the Board’s decision is a discretionary one within the confines of the statutory criteria, but it is also one subject to judicial review. In contrast, the trial court believed that the term “may” was the Legislature’s way of saying that the Commission had discretion to do whatever it wants without judicial oversight. But that overlooks the remainder of the statute *537 as well as caselaw and opinions of. Florida’s Attorney General contradicting,such a conclusion. First of . all, the word “may” in section 177.101(3) is used primarily as a legislative grant of authority to a local governing body to be able to vacate plats under specified circumstances. The -purpose of Part I of Chapter 177, Florida Statutes (entitled “Platting”), is to “to establish consistent minimum requirements, and to create such additional powers in local governing bodies, as herein provided to regulate and control the platting of lands. This part establishes minimum requirements and does not exclude additional provisions or regulations by local ordinance, laws, or regulations.” § 177.011, Fla. Stat. (2014) (emphasis added).
As the italicized language makes clear, a central purpose of the “Platting” statutes is to grant “additional powers” to local government, which is precisely what section 177.101(3) does, stating: “The governing bodies of the counties of the state may adopt resolutions vacating plats in whole or in part of subdivisions in said counties, returning the property covered by such plats either in whole or in part into acreage.” § 177.101(3), Fla. Stat. As the Attorney General has noted in construing this section, the “power of a county or municipality to vacate property dedicated to a public use is controlled by statute.” Op. Att’y Gen. Fla.2005-11 (2005) (emphasis added). A county is powerless to vacate a subdivision plat absent compliance with the statute, which requires an application from the landowner. See Op. Att’y Gen. Fla. 72-169 (1972) (“[T]here is no authority whatsoever under § 177.101 ... for a board of county commissioners to vacate, upon its own motion, a subdivision plat.”).
Far from conferring unreviewable discretion, section 177.101(3) is a narrow grant of authority by which local governing bodies must govern- their actions. It is restricted . to those . circumstances where a person owning platted property shows that vacation of the plat “will not affect the ownership or right of convenient access -of persons owning other parts of the subdivision.” § 177.101(3), Fla. Stat. Local governing bodies do not have unbridled discretion to do what they want or believe is justified; instead, upon a showing of the statutory requirements (and, if applicable, local code-based requirements), the Commission has a legal responsibility to grant the vacation request unless they prove non-compliance with applicable law. As our supreme court has said: “To deny a plat application, a local government agency must show by competent substantial evidence that the application does not meet the published criteria.” Broward Cnty. v. G.B.V. Int'l, Ltd., 787 So.2d 838, 842 (Fla.2001). In other words, the burden is upon thé local governing body to demonstrate by competent, substantial evidence that an applicant is not entitled to the requested action; whatever discretion the local governing body has is limited and not unbounded.
' Further, the conclusion that local governing bodies lack broad, unreviewable discretion in their processing of plat vacation applications is buttressed by the statutory requirement that grants and denials of plats “must be uniformly administered.” Id.; see also § 177.101, Fla. Stat. (establishing “consistent minimum requirements” as to platting). Discretion is constrained where official action must be uniformly administered pursuant to consistent standards,
Finally, the trial court’s denial of judicial review is a miscarriage of justice, akin to a denial of diie process, because it foreclosed any judicial review of the Commission’s rejection of the plat vacation application. , To be. upheld, the denial of the *538 application required that the Commission demonstrate by competent, substantial evidence that Blair Nurseries did not meet the statutory requirements, an inquiry that the trial court did not undertake (i.e., “the court need not reach the testimonial or valuation issues”). It is hard to imagine anything more manifestly unjust than a complete denial of judicial review when it should otherwise have been provided as a matter of right. G.B.V., 787 So.2d at 843 (“[F]irst-tier certiorari review is not discretionary but rather is a matter of right and is akin in many respects to a plenary appeal.... ”). For these reasons, and because our role “is to halt the miscarriage of justice, nothing more,” id., we quash the circuit court’s decision.
ROWE, J., concurs; BILBREY, J. dissents with opinion.

. Section 8.06,01 of the Clay County Development Code provides only that the County may require a survey or improvements for "equivalent access,” but does not speak in terms of what discretion the Board may wield. As such, it is not relevant as to the issues raised in this proceeding.