DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

YBOR PROPERTIES, LLC,

Petitioner,

v.

CITY OF TAMPA and JOSEPH CALDWELL,

Respondents.

No. 2D2025-1535

_____

March 25, 2026

Petition for Writ of Certiorari to the Circuit Court for Hillsborough County; Christine A. Marlewski, Judge.

Allison C. Doucette and Ethan J. Loeb of Bartlett Loeb Hinds Thompson and Angelos, Tampa, for Petitioner.

Andrea Zelman, City Attorney, and David E. Harvey, City Attorney's Office, Tampa, for Respondent City of Tampa.

Michael J. Labbee and Tyler A. Hayden of Phillips, Hayden & Labbee, LLP, St. Petersburg, for Respondent Joseph Caldwell.

BLACK, Judge.

Ybor Properties, LLC, seeks second-tier certiorari review of the circuit court's order denying its petition for writ of certiorari. In the circuit court, Ybor Properties petitioned for a writ quashing the City of

Tampa City Council's Final Order Granting Petition and Overturning Formal Decision of the Zoning Administrator. We grant the second-tier petition and quash the order of the circuit court.

In 2000 the City of Tampa went through a rezoning process. Properties now owned by Ybor Properties were set to be rezoned from YC-6, which allows a parking lot as a nonconforming use, to YC-7, which does not. On March 8, 2000, 717 Parking Enterprises, on behalf of itself and the property owner at the time, submitted an opt-out letter to the City requesting that the subject parcels be opted out of the proposed rezoning. This letter was consistent with opt-out letters 717 Parking sent to the City concerning its other properties subject to the rezoning.

On March 16, 2021, more than twenty years after the submission of the March 8, 2000, opt-out letter, the City issued a code enforcement violation to Ybor Properties, citing Ybor Properties' use of the subject parcels as parking lots in violation of YC-7 zoning. The other properties for which 717 Parking had submitted opt-out letters were not in violation as they had remained YC-6 zoned. On May 26, 2021, Ybor Properties submitted an Application for Written Determination—Formal Decision pursuant to the City of Tampa, Florida, Code of Ordinances Section 27-54, seeking to formally confirm the status of the parcels as governed by YC-6 zoning. The necessary documents were not notarized and submitted until June 16, 2021. The Code of Ordinances open record period for interested parties to provide documentation began July 9, 2021, and ended July 29, 2021. City of Tampa, Fla., Code of Ordinances § 27-54(c) (2020).

On August 17, 2021, the zoning administrator issued a formal decision determining that the parcels were zoned YC-7 and could not be used as parking lots. The decision specifically stated that there was

2

"insufficient direct evidence in the record" to support the exclusion of the parcels from the zoning change. It also included that the decision "is valid as of the date of the letter and continues to be valid until modified by official action of the City. If you disagree with any findings stated in this determination letter, you may file a petition for review."

On August 30, 2021, the zoning administrator issued a second final determination, finding that "additional documentation was discovered by the City relevant to the determination regarding the [parcels'] land use and zoning, and as a result, the Zoning Administrator rescinds the letter dated August 17, 2021." The August 30 determination included:

> On March 8, 2000, 717 Parking provided written correspondence to the City during an area-wide land use and zoning change (Plan Amendment 99-3/Rezoning Z00-15), requesting to retain the future land use classification and zoning category of HC-24 and YC-6, respectively, and [be] excluded from proposed changes (see attached letter). The request to be excluded from the proposed changes was not placed in the public record and as a result, the land use was changed from HC-24 to CMU-35 and the zoning was changed from YC-6 to YC-7.
>
> Upon further review of the available evidence, it is clear that there was a request by 717 Parking for these [parcels] to retain the existing land use and zoning categories and had the request been placed in the public record, City Council would have excluded said property from both the land use change and the zoning change and it would have retained the HC-24 land use and the YC-6 zoning. This is evidenced by City Council's actions on other properties owned or represented by 717 Parking, including 1612 through 1616 East 5th Avenue.
>
> In summary, it is my determination, based on the evidence and actions by Tampa City Council at the March 8, 2000, hearing, that the [parcels] should not have been included in the area wide comprehensive plan amendment and rezoning and should have remained HC-24 and YC-6.

The August 30 decision was within the fourteen-day period in which Ybor Properties could have sought review of the August 17 decision. *See* City of Tampa, Fla., Code of Ordinances § 27-61(d) (2020). The August 30 decision effectively mooted Ybor Properties' need to seek review of the prior decision.

On September 13, 2021, Joseph Caldwell filed a Petition for Review of the August 30, 2021, Formal Decision as an aggrieved person as defined by the Code of Ordinances. *See* City of Tampa, Fla., Code of Ordinances § 27-61(c) (2020). In his petition, Mr. Caldwell challenged the evidence supporting the August 30 decision. He did not challenge the zoning administrator's ability to rescind the August 17 decision.

A quasi-judicial hearing was held on the petition on May 3, 2022. The hearing officer recommended denying Mr. Caldwell's petition and affirming the August 30 formal decision of the zoning administrator. This recommended order (RO) was filed with the City Council pursuant to section 27-61(j)(1) of the Code of Ordinances. The City Council held two public hearings to consider the RO and remanded the matter back to the hearing officer for further fact-finding. *See* City of Tampa, Fla., Code of Ordinances § 27-61(1)(e)(iii) (2020). Specifically, the City Council asked for chain of custody evidence as to whether the opt-out letter existed in the City's files in March 2000 and evidence regarding other opt-outs.

An amended RO was issued in January 2023 and again recommended denying Mr. Caldwell's petition and affirming the formal decision of the zoning administrator granting the opt-out. In the amended RO, the hearing officer found that while Mr. Caldwell's "skepticism" regarding the validity of the opt-out letter was

4

understandable, "the testimony was uncontroverted that the opt-out letter was personally delivered" to the City two decades ago. The Code of Ordinances specifies that the zoning administrator consider "all written documents received as part of the application and through the open record period and any other relevant information obtained through research conducted by the zoning administrator or designee" and "consult with appropriate city staff and the legal department, if so desired." City of Tampa, Fla., Code of Ordinances § 27-54(b)(7) (2020). Included in the evidence submitted was the March 8, 2000, opt-out letter concerning the subject parcels. The amended RO also included that, as a matter of law, Mr. Caldwell bore the burden of proof as the petitioner and that he did not meet his burden given the uncontroverted testimony that the letter was provided to the City in March 2000. The amended RO included, however, that the City had no record of receiving the letter before April 2021. Additional testimony included that the zoning administrator spoke with the legal department regarding the March 2000 opt-out letter at issue. The zoning administrator testified that he received the opt-out letter via email directly from Ybor Properties in April 2021. Emails to the zoning administrator are subject to public records requests.

The amended RO was then reviewed by the City Council. After oral argument was held before the City Council, the Council rejected the amended RO. It voted to grant Mr. Caldwell's petition and overturn the zoning administrator's decision, thereby denying Ybor Properties' request for exemption. The oral findings following the vote included the purported failure of the hearing officer to do a forensic investigation of the documents and the lack of testimony from the legal department with whom the zoning administrator consulted before issuing his final

5

decision.  The City Council also found that the testimony that the opt-out letter had been hand-delivered in March 2000 was "not competent or substantial evidence to prove that the letter was in the City's hands at that time."

The City Council's written order rejecting the RO makes findings and conclusions significantly different than its oral findings and conclusions.  In the written order, the City Council rejected every conclusion of law in the RO as "unreasonable and clearly erroneous." The City Council included in its conclusions of law that the zoning administrator "lacked legal authority" to rescind the August 17 formal decision and issue a revised formal decision and that the zoning administrator lacked legal authority to consider the opt-out letter because it was "uncontroverted" that it was not received as part of the application or otherwise during the open record period.  The City Council further found that the uncontroverted fact that the opt-out letter had not been received with the original application or during the open record period was "omitted as a specific finding of fact in the [RO]" and that "this relevant and material fact was not considered in the [RO] after remand."

Following the City Council's rejection of the RO and denial of Ybor Properties' exemption, Ybor Properties filed a petition for writ of certiorari with the circuit court.  In that petition, Ybor Properties argued that the City Council both departed from the essential requirements of law and failed to provide due process in issuing its order.  Ybor Properties argued that the City Council departed from the essential requirements of law by (1) rejecting or substituting the hearing officer's findings of fact in violation of the Code of Ordinances; (2) ignoring findings of fact that contradicted the City Council's conclusions of law in violation of the limited review allowed by the Code of Ordinances; (3) failing to apply

6

relevant provisions of the Code of Ordinances when reaching its conclusion that the zoning administrator lacked legal authority to consider the opt-out letter; and (4) failing to apply relevant provisions of the Code of Ordinances when reaching the conclusion that the zoning administrator could not rescind his August 17 decision and issue his August 30 decision.  Ybor Properties also argued that the City Council deprived it of due process by changing the basis of its decision from that which was pronounced at the oral argument following the vote to that of the written order and doing so without the benefit of a public hearing.

The circuit court denied Ybor Properties' petition.  In its findings of fact, the circuit court stated that Mr. Caldwell argued in his petition that the zoning administrator lacked legal authority to overturn his own decision.  This is patently unsupported.  The issue of the zoning administrator's authority to rescind the August 17 decision was not raised by Mr. Caldwell in his petition for review.  The lack of a public hearing on the proposed order that was adopted by the City Council compounded the due process error.[1]

The circuit court order also incorrectly states that the April 2021 email including the opt-out letter had never been produced. Nonetheless, the court determined, as a matter of law, that even if it had been produced, there was no conflict between the City Council's findings and the hearing officer's findings.  The court found that Ybor Properties

---

[1] The circuit court addressed Ybor Properties' argument that because the August 30 decision was issued within the fourteen days for it to appeal from the August 17 decision there was no opportunity to seek review as part of the due process claim.  That argument, however, was part of Ybor Properties' departure claims; its due process claim centered on the changed basis of granting Mr. Caldwell's petition and doing so without an opportunity for Ybor Properties to argue against it.

had not cited any authority that would explicitly allow the zoning administrator to rescind his August 17 decision and issue the August 30 decision. It then found that Ybor Properties had failed to appeal the August 17 decision and that had it "pursued the appropriate avenue" it would have borne the burden of proof.

In its conclusion, the circuit court stated:

> <u>Considering the facts of the case as a whole</u>, the [parcels] w[ere] zoned YC-7 . . . in 2021. . . . Ybor Properties insists now that the [parcels] *should* be entitled to legal non-conforming status. This argument is entirely based on an <u>unwritten policy allegedly created unilaterally by one City employee who has since retired, with no evidence that this policy was meant to apply to the [parcels] specifically</u>. . . . This court cannot and will not issue orders based on <u>nebulous, unwritten policies established in the record solely by hearsay testimony</u> describing a decades-old recollection from a layperson with an interest in the outcome because such testimony, on its own, does not constitute competent, substantial evidence, nor is it permitted to form the sole basis of the hearing officer's findings.

(Underlined emphasis added.) Further, the court stated that "Ybor Properties' production of a copy of a letter allegedly sent . . . does nothing to prove, disprove, or explain the City's decision to rezone the property in 2000."

Following the denial of its petition in the circuit court, Ybor Properties filed the subject petition for writ of certiorari in this court.

Second-tier certiorari review "is limited in scope 'to whether the circuit court (1) afforded procedural due process and[] (2) applied the correct law.' " *Hillsborough County v. G.L. Acquisitions Corp.*, 415 So. 3d 1205, 1207 (Fla. 2d DCA 2025) (alteration in original) (quoting *Miami-Dade County v. Omnipoint Holdings, Inc.*, 863 So. 2d 195, 199 (Fla. 2003)). "In other words, this two-pronged, second-tier review is simply

8

another way of deciding whether the lower court 'departed from the essential requirements of law.' " *Id.* (quoting *Omnipoint Holdings*, 863 So. 2d at 199). "[T]he circuit court may not reweigh the evidence nor substitute its judgment for that of the agency." *City of Deerfield Beach v. Boca Dominium*, 795 So. 2d 145, 146 (Fla. 4th DCA 2001) (citing *Educ. Dev. Ctr., Inc. v. City of W. Palm Beach Zoning Bd. of Appeals*, 541 So. 2d 106, 108 (Fla. 1989)); *see also Town of Longboat Key v. Islandside Prop. Owners Coal., LLC*, 95 So. 3d 1037, 1039-40 (Fla. 2d DCA 2012) ("A court departs from the essential requirements of the law if it reweighs the record evidence.").

"The decision to grant or withhold relief by way of second-tier certiorari largely depends on our 'assessment of the *gravity of the error* and the *adequacy of other relief*.' " *Save Calusa, Inc. v. Miami-Dade County*, 355 So. 3d 534, 541 (Fla. 3d DCA 2023) (quoting *Custer Med. Ctr. v. United Auto Ins.*, 62 So. 3d 1086, 1092 (Fla. 2010)). Where the petitioner has been deprived "of the full scope of review to which it was . . . entitled" a miscarriage of justice has occurred, warranting certiorari relief. *See MGM of W. Fla., LLC v. Manatee County*, 406 So. 3d 351, 355 (Fla. 2d DCA 2025).

Ybor Properties contends that the circuit court applied the incorrect law because it reweighed evidence and made new findings of fact based on its view of the evidence. Given the language in the circuit court's order, including that the court viewed the sufficiency of the 2000 opt-out letter as part of a "nebulous, unwritten polic[y] established in the record solely by hearsay testimony describing a decades-old recollection from a layperson with an interest in the outcome," the circuit court did more than determine that the City Council's findings were supported by competent substantial evidence. Further, the burden was on Mr.

9

Caldwell, not Ybor Properties, at the City Council hearing; yet the circuit court shifted the burden to Ybor Properties—not to establish the certiorari prongs but to establish entitlement to the opt-out. Here "it [is] apparent that the circuit court 'combed the record and extracted its own factual finding[s].' " *Cf. Town of Longboat Key*, 95 So. 3d at 1040 (quoting *Broward County v. G.B.V. Int'l, Ltd.*, 787 So. 2d 838, 845 (Fla. 2001)). The circuit court therefore applied the wrong law because "instead of applying the [first-tier certiorari] standard of review, the court applied an independent standard of review." *See G.B.V. Int'l*, 787 So. 2d at 845. And applying an incorrect or independent standard of review in a certiorari proceeding "is tantamount to departing from the essential requirements of the law." *Id.*

Ybor Properties also argues in its petition here that the circuit court departed from the essential requirements of the law by failing to "apply the correct rubric for due process." Rather, "the circuit court ignored Ybor Properties' due process argument and in turn accused Ybor Properties of inappropriate conduct." Ybor Properties is correct. The circuit court's order wholly failed to address the due process argument Ybor Properties raised in its petition: that the City Council based its determination on an issue not raised by Mr. Caldwell and for which no argument was permitted at oral argument—the legal authority of the zoning administrator to rescind his August 17 decision and replace it with his August 30 decision. The circuit court's order addresses only the issue of the review period and the lack of cited authority explicitly permitting the zoning administrator to rescind his initial decision.

The due process argument raised in the first-tier petition but not addressed in the circuit court's order is significant. The City Council's vote to grant Mr. Caldwell's petition was not based on the zoning

10

administrator's lack of authority, and Ybor Properties had no ability to present evidence or argument on that issue because it was not raised in Mr. Caldwell's petition and the City Council precluded argument on the issue.

The circuit court departed from a clearly established principle of law when it failed to consider Ybor Properties' argument that the City Council deprived it of due process by entertaining an issue not raised in the petition before it and otherwise by precluding argument on the issue. *See Progressive Am. Ins. v. SHL Enters., LLC*, 264 So. 3d 1013, 1017 (Fla. 2d DCA 2018) ("By improperly restricting the scope of its own certiorari review, the circuit court did not engage in a meaningful analysis of the county court's order and thus could not have concluded that there was no departure from the essential requirements of the law."); *State Farm Fire & Cas. Co. v. Lezcano*, 22 So. 3d 632, 634 (Fla. 3d DCA 2009) ("A denial of the guarantee of due process represents a violation of a clearly established principle of law such that certiorari relief is warranted."); *cf. Progressive Express Ins. v. Fry Enters., Inc.*, 264 So. 3d 1008, 1012 (Fla. 2d DCA 2018) ("[A] circuit court's failure to rule on a party's pending motion directed to the briefing and record before the court prior to the court ruling on the merits of a petition constitutes a denial of procedural due process."). The circuit court's failure to consider Ybor Properties' due process argument is a miscarriage of justice. *See Blair Nurseries, Inc. v. Baker County*, 199 So. 3d 534, 537-38 (Fla. 1st DCA 2016) ("[T]he trial court's denial of judicial review is a miscarriage of justice, akin to a denial of due process, because it foreclosed *any* judicial review of the Commission's rejection of the plat vacation application. . . . It is hard to imagine anything more manifestly unjust than a complete denial of

judicial review when it should otherwise have been provided as a matter of right." (citing *G.B.V. Int'l,* 787 So. 2d at 843)).

The circuit court failed to apply the certiorari standard by reweighing evidence and by failing to address a significant due process issue. The latter failure results in a miscarriage of justice. Accordingly, we grant the petition for writ of certiorari and quash the circuit court's order.

Petition granted; order quashed.

KHOUZAM and ROTHSTEIN-YOUAKIM, JJ., Concur.

_____

Opinion subject to revision prior to official publication.